STATE of Utah, Plaintiff and
Respondent,

v.

Harry F. SUNIVILLE, Defendant
and Appellant.

No. 860431.

Supreme Court of Utah.

Aug. 28, 1987.

Bradley P. Rich, Salt Lake City, for plaintiff and respondent.

David L. Wilkinson, Earl F. Dorius, Salt Lake City, for defendant and appellant.

HOWE, Justice:

Defendant Harry F. Suniville appeals from his jury conviction of aggravated robbery, a felony of the first degree. Utah Code Ann. § 76–6–302 (1978).

On February 28, 1986, during the noon hour, a man subsequently identified as defendant entered the Mountain America Credit Union in Midvale, Utah. He was wearing a dark ski mask over his face, a long gold-yellow parka-type coat, and blue jeans. As he approached the teller, Suzette Anderson, his right hand was inside his coat pocket which he lifted over the counter. At the trial, Anderson testified that the pocket was "up over the counter like he had a gun" and that "something was pointing at me in his pocket." She further testified that the man did not tell her he had a gun, that he did not show her a gun, and that she did not see a gun or anything that even resembled a gun. Rather, he said, "This is a robbery, don't turn it into a homicide. Give me all of your money."

The man demanded "big bills" from Anderson and warned her not to try to give him the "bait money." With his left hand, he grabbed approximately $1,500, put it in his pocket, and turned to leave. As he approached the door, he said, "If anyone tries to follow me, I will blast you." His right hand remained in his coat pocket throughout the entire incident.

The State called several witnesses who testified that they saw the man flee from the credit union. Dan Parker, a construction worker who was eating his lunch in the parking lot, saw the man exit the credit union and pull off his mask as he ran directly in front of Parker. Suspecting a robbery, Parker shouted at the man and chased him across the parking lot. He described the man as having his right hand in his coat pocket and testified that he did not see a gun. Parker later identified defendant from a photo array shown to him by the police. At trial, he testified that defendant was the man he saw exiting the credit union.

Two other workers, Harry Barker and Jeffrey Hill, saw the man run from the credit union and observed him from within fifteen feet. Though Barker saw "something" in his right hand, he "couldn't tell what it was," and neither Barker nor Hill could testify that the man had a gun. Both, however, identified defendant from police photos and later made an in-court identification of him.

A fourth worker, Nick Dubois, watched the man enter a chocolate brown 1970–75 model Camero with chrome beauty rims that were bent and "flashed" as the car drove away. There were no license plates on the car. Although he could not identify defendant, within "a week and a half," Dubois and a police officer identified the same "chocolate brown Camero" parked in front of defendant's residence. Defendant was later arrested while driving the Camero and charged with aggravated robbery. No gun was found in defendant's car or home, and at trial there was no testimony that anyone actually saw a gun during the course of the robbery.

I.

Defendant contends that there was insufficient evidence to establish the use of a firearm or a facsimile of a firearm during the course of the robbery and that, at most, the offense committed was robbery, a second degree felony under Utah Code Ann. § 76–6–301 (1978). In 1975, the legislature amended the Utah robbery statutes to provide, in pertinent part:

76–6–301. Robbery.—(1) Robbery is the unlawful and intentional taking of personal property in the possession of another from his person, or immediate presence, against his will, accomplished by means of force or fear.

(2) Robbery is a felony of the second degree.

76–6–302. Aggravated Robbery.—(1) A person commits aggravated robbery if in the course of committing robbery, he:

(a) Uses a firearm or a facsimile of a firearm, knife or a facsimile of a knife or a deadly weapon....

(2) Aggravated robbery is a felony of the first degree.

Prior to the 1975 amendment, section 76–6–302(1)(a) simply read: "uses a deadly weapon."

With this backdrop of legislative change, we must determine whether defendant used a firearm or a facsimile of a firearm while robbing the Mountain America Credit Union. Specifically, due to the fact that none of the witnesses saw a gun, we must decide whether defendant's menacing gesture accompanied by threats indicating the presence of a gun constitutes a "facsimile of a firearm" under the statute. The statute does not contain a definition of the word "facsimile." Common usage of the word, however, is quite clear from other sources. A facsimile is "an exact copy, preserving all the marks of the original." *Black's Law Dictionary* 531 (rev. 5th ed. 1979, *and* 4th ed. 1968, at 706). It is "[a]n exact and precise copy of anything," or "[a]n exact reproduction, for example, the signature reproduced by rubber stamp." *Ballentine's Law Dictionary* 449 (3d ed. 1969). Webster defines facsimile as "1. Act of making a copy; imitation. 2. An exact and detailed copy of anything, as of a book, document, painting, or statute ... (a) [t]o be an exact copy of." *Webster's New International Dictionary* 908 (2d ed. 1938).

This Court has previously considered the "facsimile of a firearm" language of section 76–6–302 in *State v. Turner*, 572 P.2d 387 (Utah 1977). In that case, the defendant was convicted of aggravated robbery of a grocery store. At trial, the victim, who was an employee, testified that "one to two inches of a gun barrel was protruding from underneath defendant's shirt throughout the robbery." *Turner*, 572 P.2d at 388. Upon arrest, no gun was found. Concerning the issue of whether a facsimile of a firearm was used during the course of the robbery, the trial court gave two instructions as follows:

Instruction No. 11: You are instructed that a facsimile is defined as: an exact and precise copy of anything. An exact reproduction, for example, the signature reproduced by a rubber stamp.

Instruction No. 12: You are further instructed that a facsimile of a firearm is any instrument that by its appearance resembles a firearm.

*Turner*, 572 P.2d at 389.

In *Turner*, we held that instruction Nos. 11 and 12 did not make the statutory phrase, "facsimile of a firearm," so vague as to make the statute unconstitutional as applied, nor did we find that instruction No. 12 expanded the meaning of "facsimile" beyond its proper definition. In so holding, the Court accepted Webster's definition of "facsimile" as an "act of making copy, imitation" and cited the New York case of *People v. Delgardo*, 1 Misc.2d 821, 146 N.Y.S.2d 350 (1955), to define the word "imitation":

The word imitation when applied to pistols and revolvers means so nearly resembling the genuine as to mislead, with the apparent object of producing, and likely to produce, upon the minds of those against whom it is to be used, the belief that the imitation weapon is capable of producing all the injurious consequences to the victim as the use of the genuine article itself. [146 N.Y.S.2d at p. 356.]

*Turner*, 572 P.2d at 389. The Court found instruction No. 12 to be a "sensible interpretation" of the statutory language.

■ In the present case, the State contends that *Turner* allows for a subjective analysis in determining whether a firearm or a facsimile of a firearm was used during the course of the robbery. The subjective analysis focuses upon the perception of the victim who is threatened with a concealed weapon. The victim "is put in the same degree of fear and feels as strongly compelled to comply with the robber's demands as a victim who is threatened with a weapon which is openly displayed." *State v. Hopson*, 122 Wis.2d 395, 362 N.W.2d 166 (Ct.App.1984). The trial court apparently adopted this analysis when it ruled:

It is the Court's belief and interpretation of the statute involved, and in light of *State v. Turner*, that when one uses

any object with the intent to make the victim believe there is a gun and that the victim reasonably could believe there is a gun, that whatever object is being used is, in fact, a facsimile of a firearm, whether it is a piece of pipe in the pocket or a plastic gun or even a finger, if that is perceived by the victim as being a gun and it is intended by the perpetrator to be a gun or to at least make the victim think it is a gun, I believe we have the elements necessary to meet requirements of aggravated robbery.

The State cites several cases from other jurisdictions where the subjective analysis has been used to hold that the representations of an unarmed robber which convey the impression that he is armed will bring the offense within the statutes proscribing actual armed robbery. Each case, however, was decided under statutory language broader than that contained in our section 76–6–302 and thus allows such an interpretation, for example: *State v. Hopson, supra,* where armed robbery may be established "by use or threat of use of a dangerous weapon or any article used or fashioned in a manner to lead the victim reasonably to believe that it is a dangerous weapon ... ," Wis.Stat.Ann. § 943.32(1)(b), (2) (1985); *Breedlove v. State,* 482 So.2d 1277 (Ala.Crim.App.1985), where "an article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or dangerous instrument, or any verbal or other representation by the defendant that he is then and there so armed, is prima facie evidence ... that he is so armed," Ala.Code § 13A–8–41(b) (1975); *State v. Cooper,* 140 N.J.Super. 28, 354 A.2d 713 (1976), where amendments to N.J.Stat.Ann. § 2A:151–5 explicitly reveal the legislative purpose to add additional punishment to the sentence of those offenders who perpetrate crimes "either with dangerous weapons or by placing the victim in fear of the use of a dangerous weapon"; *Cromite v. Commonwealth,* 3 Va.App. 64, 348 S.E.2d 38 (1986), where Virginia Code § 18.2–53.1 requires use or an attempt to use a firearm or display such a weapon in a threatening manner, and defendant stuck a hard object in victim's stomach and victim testified that the object *felt* like a gun; *State v. Henderson,* 34 Wash.App. 865, 664 P.2d 1291 (1983), where subjective analysis is allowed under Wash.Rev.Code § 9A.56.-200(1)(b) to determine "what appears to be a firearm or other deadly weapon...." It is obvious that had the Utah Legislature intended for the subjective analysis to be used in aggravated robbery cases, it could have written a statute employing language which would admit of that analysis. Instead, the legislature was very precise and utilized language that clearly requires the use of a firearm or a facsimile thereof. The issue, under our statute, is not what was intended by defendant or what impression was made on the victim, but what was *used.*

■ While we recognize the validity of the subjective analysis in the cases cited above, neither section 76–6–302 nor *State v. Turner* allows for such an analysis. In *Turner,* the victim testified that he saw one to two inches of a gun barrel protruding from underneath the defendant's shirt throughout the robbery. In the case at bar, no witness saw any part of a gun nor was there any evidence that defendant used a gun. In fact, the victim, Suzette Anderson, admitted that defendant did not tell her he had a gun and that she "never saw a gun or anything that even resembled a gun." In *Turner,* this Court quoted approvingly from *People v. Delgardo, supra,* that an "imitation," a synonym of facsimile, when applied to pistols and revolvers means "so nearly resembling the genuine as to mislead." In the present case, the evidence fails to establish that defendant used a firearm or any instrument or object so nearly resembling a firearm as to mislead. Indeed, the victim was not misled by the use of a firearm or a facsimile thereof, but rather by defendant's threatening words and gestures. While this certainly satisfies the elements of robbery which must be accomplished by means of force and fear, a second degree felony, it does not satisfy the elements of aggravated robbery.

Defendant's menacing gesture accompanied by verbal threats is not sufficient evidence alone to establish the use of a firearm or a facsimile of a firearm. To hold otherwise would pervert the language of section 76–6–302 and erode the statutory distinction between robbery and aggravated robbery. We find a recent decision of the Supreme Court of Kentucky to be persuasive. In a case with facts very similar to the present case, the Commonwealth of Kentucky supported the defendant's conviction of first degree robbery by asserting: "It is not fatal that appellant threatened with an unseen weapon or instrument.... The culpability of the defendant's intent is manifested by his threat of physical harm and danger to the victim exists from the response to fear he perceives as reasonable." *Williams v. Commonwealth,* 721 S.W.2d 710, 712 (Ky.1986). Reversing the conviction, the Court responded:

> This, however, does not distinguish it from second degree robbery in which the threat of physical force is the gravamen. A response of perceiving danger is quite real under threat; however, such cannot serve to convert something merely speculated upon (a weapon or instrument) into established existence.... Without an instrument's ever being seen, an intimidating threat albeit coupled with a menacing gesture cannot suffice to meet the standard necessary for a first-degree robbery conviction.... Without something tangible backing up the threat, words do not reach beyond the status of threats and as such are insufficient to sustain submission under first-degree robbery.

*Williams,* 721 S.W.2d at 712, 713.

■ Force and fear are elements of robbery as defined in section 76–6–301. They are clearly established by the evidence in this case. To sustain a conviction under section 76–6–302, however, a firearm or a facsimile thereof must be used by the defendant. We must observe this critical distinction between robbery and aggravated robbery where the evidence is only of verbal threats and intimidating gestures.

## II.

■ Finally, defendant argues that the trial court abused its discretion by refusing to give a requested cautionary eyewitness instruction as required by this Court in *State v. Long,* 721 P.2d 483 (Utah 1986). We find no error. Our decision in *Long* directed that "in cases tried from this day forward, trial courts shall give such an instruction whenever eyewitness identification is a central issue in a case and such an instruction is requested by the defense." *Long,* 721 P.2d at 492. Because the case at bar was tried, and a verdict reached, before our decision in *Long* was filed, the trial court was not bound by *Long.*

Even absent the requirement of *Long,* the trial court did not abuse its discretion by refusing the requested instruction. The State presented corroborating testimony from several eyewitnesses regarding the identity of defendant. In turn, defense counsel's closing argument sufficiently alerted the jury to the possibility of error in eyewitness identification.

Defendant's conviction of aggravated robbery under section 76–6–302 is vacated. The conviction is reduced to robbery, a felony of the second degree under section 76–6–301, and the case is remanded to the trial court for defendant to be resentenced.

HALL, C.J., STEWART, Associate C.J., and DURHAM and ZIMMERMAN, JJ., concur.