**STATE of Utah, Plaintiff and Appellee,**

v.

**Pierre ADAMS, Defendant and Appellant.**

**No. 910437–CA.**

Court of Appeals of Utah.

April 9, 1992.

Joan C. Watt (argued), Lynn R. Brown, Salt Lake Legal Defender Ass'n, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, Atty. Gen., Judith S.H. Atherton (argued), Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Before BENCH, GREENWOOD and ORME, JJ.

## OPINION

GREENWOOD, Judge:

Defendant Pierre Adams appeals his conviction of aggravated robbery, a first degree felony, in violation of Utah Code Ann. § 76–6–302 (1990). We affirm.

## BACKGROUND

At approximately 4:30 p.m. on August 3, 1990, a man approached the drive-up window at the Taco Time restaurant on 1000 West and North Temple in Salt Lake City, and ordered two tacos. He then told the clerk he had changed his mind and would come in the restaurant and order. Two young women, Robyn Maestas and Jennifer Greenwell, were working at the restaurant at the time. Maestas was at the counter pouring punch when the man walked in. Greenwell, who had helped him at the drive-up window, was in the office talking to her father on the telephone. The office is approximately five feet from the counter and the office door was open.

The man stood across the counter, about twelve inches from Maestas, and demanded all of the money in the store. Maestas opened the cash registers and gave him the money. Still on the telephone, Greenwell was unaware the store was being robbed. The man repeatedly asked Maestas to whom Greenwell was talking on the telephone. He became upset and told Maestas that if she did not find out, he would shoot her. He also told her not to tell Greenwell about the robbery or call the police or he would come back and shoot her. Maestas never saw a gun but testified that the man touched a bulge in his pocket and said he had a gun. He remained in the restaurant a total of ten to fifteen minutes. When he left, he walked slowly south on 1000 West. Maestas and Greenwell immediately wrote down a description of the robber and Greenwell called the police. The police officers did not save the written description, however.

Approximately ten to twenty minutes after Greenwell called the police, police officers arrested defendant about a half block away from the Taco Time. A police officer then took Maestas and Greenwell to identify defendant, whom they said fit the women's description of the robber. Defendant was handcuffed and standing between two police officers in the doorway of a police van. Both women sat together in the back of the police car and identified defendant from a distance of about thirty feet. Defendant was arrested and charged with aggravated robbery. He did not have a gun when the officers arrested him.

Before trial, defendant made a motion to suppress testimony regarding the eyewitness identification, claiming the procedure violated his due process rights. The trial court denied the motion. Following a jury trial, defendant was convicted of aggravated robbery.

## ISSUES

Defendant appeals his conviction on the basis that the witness identification process was improper and that the aggravated robbery charge should have been reduced to simple robbery.

## WITNESS IDENTIFICATION

■ The constitutionality of an identification procedure is a mixed question of law and fact. *Sumner v. Mata*, 455 U.S. 591, 598, 102 S.Ct. 1303, 1306, 71 L.Ed.2d 480 (1982). The trial court's conclusion that defendant's due process rights were not violated is reviewed de novo. *Archuleta v. Kerby*, 864 F.2d 709, 711 (10th Cir.1989). The factual findings underlying the conclusion are, however, entitled to a presumption of correctness. *Id.*

Defendant's motion to suppress the identification was based on both the Fourteenth Amendment to the United States Constitution and Article I, Section 7 of the Utah Constitution. However, at the hearing on the motion, defense counsel did not make separate arguments under each constitutional provision or differentiate between them.

Determining the constitutionality of an out-of-court eyewitness identification procedure under the Federal Constitution involves a two-step analysis. *Archuleta,* 864 F.2d at 711. First, the court must determine whether the identification procedure was unnecessarily suggestive so as to give rise to the possibility of irreparable misidentification. *Neil v. Biggers,* 409 U.S. 188, 198–200, 93 S.Ct. 375, 381–82, 34 L.Ed.2d 401 (1972); *Simmons v. United States,* 390 U.S. 377, 383–84, 88 S.Ct. 967, 970–71, 19 L.Ed.2d 1247 (1968); *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967).

Second, the court must determine "whether under the totality of the circumstances, the identification was reliable." *Biggers,* 409 U.S. at 199, 93 S.Ct. at 382; *see also Mason v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977) ("reliability is the linchpin in determining the admissibility of identification testimony"). The Supreme Court set forth five factors to be considered when evaluating the reliability of an identification procedure:

1. The opportunity of the witness to view the criminal at the time of the crime;
2. The witness's degree of attention;
3. The accuracy of the witness's prior description of the criminal;
4. The level of certainty demonstrated by the witness at the confrontation; and
5. The length of time between the crime and the confrontation.

*Biggers,* 409 U.S. at 199–200, 93 S.Ct. at 382–83 (1972). "The court must balance these five factors against the 'corruptive effect' of the identification procedures in order to determine whether the identification testimony should have been suppressed." *Archuleta,* 864 F.2d at 711 (quoting *Mason,* 432 U.S. at 114, 97 S.Ct. at 2253); *United States v. Thurston,* 771 F.2d 449, 453 (10th Cir.1985).

Applying the *Biggers* factors to the facts of this case, we find that the identification procedure was not unnecessarily suggestive. We also conclude that the procedure was reliable under the totality of the circumstances. The identification occurred a short time after the robbery took place. Both women had the opportunity to observe the robber. Greenwell observed him when he approached the drive-up window. Maestas observed him from a twelve inch distance for ten to fifteen minutes while he was robbing the restaurant. Maestas testified that she was looking "at him most of the time." Immediately after the robber left, Greenwell and Maestas together wrote down a description of him. At the suppression hearing, Maestas testified that the man was black and was wearing a navy blue or black shirt that was open in the front and a baseball cap. She testified that Adams "had the same clothing on, and the same ball cap on, and everything," when she first identified him for the police. Both Greenwell's and Maestas's testimony at the suppression hearing and at trial indicate that they were certain Adams was the robber. We conclude that the eyewitness identification procedure did not violate defendant's due process rights under the Federal Constitution.

This court has frequently stated we will not analyze issues under the Utah Constitution when the trial court did not have the opportunity to do so. "[T]he proper forum in which to commence thoughtful and probing analysis of state constitutional interpretation is before the trial court, not ... for the first time on appeal." *State v. Bobo,* 803 P.2d 1268, 1273 (Utah App.1990) (citation omitted). "Nominally alluding to such different constitutional guarantees without any analysis before the trial court does not sufficiently raise the issue to permit consideration by this court on appeal." *State v. Johnson,* 771 P.2d 326, 328 (Utah App. 1989) *rev'd on other grounds* (citing *James v. Preston,* 746 P.2d 799, 801 (Utah App. 1987)).

We note, however, that in *State v. Ramirez,* 817 P.2d 774 (Utah 1991), the Utah Supreme Court, applying the Utah Constitution, affirmed the denial of defendant's motion to suppress an out-of-court eyewitness identification that was much less reliable than that in the instant case. In *Ramirez,* the defendant was convicted of

aggravated robbery. The incident occurred out of doors at about 1:00 a.m. Defendant was one of two robbers and wore a mask which covered most of his face. The eyewitness was one of the victims. He was held at gun point and had only a few minutes to observe defendant. When defendant arrived with the police to identify him, defendant was handcuffed to a chain link fence. He was the only suspect present and was surrounded by police officers. The eyewitness identified him from the back seat of the police car. The eyewitness was the only one of three victims who was able to identify defendant. The supreme court held that the eyewitness identification procedure did not violate defendant's due process rights under either the Utah or federal constitutions. *Id.* at 784.

The facts of the present case present a more trustworthy procedure than did *Ramirez*. As discussed above, both women had a good opportunity to view the robber. Maestas's attention, in particular, was focused on him throughout the event. The record indicates the women each remembered details of the man's clothing and both appear to be quite observant. The women's descriptions of the man to the police after the robbery, at the motion to suppress hearing and at trial are basically consistent. We conclude that these facts constitute a reliable identification under the Utah Constitution.

## AGGRAVATED ROBBERY CHARGE

Defendant argues the trial court erred in failing to dismiss the aggravated robbery charge. He claims that because he was not in possession of a dangerous weapon during the robbery, he could only be charged with and convicted of simple robbery. The elements of aggravated robbery are codified in Utah Code Ann. section 76-6-302 (Supp.1990) which reads in pertinent part:

(1) A person commits aggravated robbery if in the course of committing robbery, he:

(a) uses or threatens to use a dangerous weapon. . . .

Simple robbery is defined in Utah Code Ann. section 76-6-301 (1990) as:

[T]he unlawful and intentional taking of personal property in the possession of another from his person, or immediate presence, against his will accomplished by means of force or fear.

Defendant argues one must actually possess an item which is a dangerous weapon in order to be charged with and convicted of aggravated robbery.

"The appropriate standard of review for a trial court's interpretation of statutory law is correction of error." *State v. James*, 819 P.2d 781, 796 (Utah 1991); *State v. Swapp*, 808 P.2d 115, 120 (Utah App.1991).

We find *State v. Hartman*, 783 P.2d 544 (Utah 1989), dispositive of this issue. In *Hartman*, the supreme court held that threatening to use a dangerous weapon while committing a burglary or an assault is sufficient to fit within the aggravated burglary or aggravated assault statutes respectively. "Use or display of such a weapon is not required; threat of such use is sufficient." *Id.* at 547.

■ In enacting section 76-6-302, the legislature specified the crime of aggravated robbery included robberies during which the robber "uses or threatens to use a dangerous weapon." Utah Code Ann. § 76-6-302(1)(a). Threatening to use a dangerous weapon during the commission of a robbery, regardless of whether one actually possesses such a weapon, is sufficient for a charge of aggravated robbery under section 76-6-302. Such a construction reflects the legislative intent in enacting the statute. *See Hartman*, 783 P.2d at 547.

■ In the instant case, defendant told Maestas that he would shoot her if she told Greenwell of the robbery, called the police, or if she did not find out to whom Greenwell was speaking on the phone. While he made these threats, he put his hand on his bulging pocket, leading Maestas to believe he had a gun and reasonably fear for her physical safety. It is not clear whether defendant actually had a gun at the time of

the robbery, although he did not have a gun when he was arrested. Because defendant threatened the use of deadly force, we conclude that the trial court did not err in failing to dismiss the aggravated robbery charge.

## CONCLUSION

For the foregoing reasons, we find that the eyewitness identification procedure did not violate defendant's due process rights under either the federal or Utah constitutions. We also conclude that the trial court did not err in failing to dismiss the aggravated robbery charge. Defendant's conviction is affirmed.

ORME, J., concurs.

BENCH, J., concurs in result only.