2004 UT App 151

**STATE of Utah, Plaintiff and Appellee,**

v.

**Frank Paul REYOS, Defendant and Appellant.**

No. 20020715–CA.

Court of Appeals of Utah.

May 6, 2004.

3. If the plain meaning of the language of the Act does not reflect the Legislature's actual intent, then it is the Legislature that must change the language of the Act. However, such a change is likely unnecessary because there now exists federal legislation in this area that likely preempts state laws such as the Act. *See* 15 U.S.C. §§ 7701 to –7713 (2004).

Margaret P. Lindsay and Patrick V. Lindsay, Aldrich, Nelson, Weight & Esplin, Provo, for appellant.

Mark L. Shurtleff, Atty. Gen., and Karen A. Klucznik, Asst. Atty. Gen., Salt Lake City, for appellee.

Before BENCH, Associate P.J., GREENWOOD, and ORME, JJ.

## MEMORANDUM DECISION

BENCH, Associate Presiding Judge:

¶ 1 Defendant Frank Reyos argues that his statements "get the gun and shoot" and "shoot to kill" do not elevate his crime to aggravated robbery. We disagree.

¶ 2 Utah Code Annotated section 76–6–302 (2003) provides that "a person commits aggravated robbery if in the course of committing robbery, he a uses or threatens to use a dangerous weapon as defined in Section 76–1–601." Section 76–1–601 defines a "dangerous weapon" as

(a) any item capable of causing death or serious bodily injury; or

(b) a facsimile or representation of the item; and:

(i) the actor's use or apparent intended use of the item leads the victim to reasonably believe the item is likely to cause death or serious bodily injury; or

(ii) the actor represents to the victim verbally or in any other manner that he is in control of such an item.

*Id.* § 76–1–601(5) (2003).

¶ 3 In interpreting the aggravated robbery provision of the Utah Code, the Utah Supreme Court refuted an argument similar to Reyos's that a verbal threat requires an accompanying gesture or show of ability to use a dangerous weapon. *See State v. Hartmann,* 783 P.2d 544 (Utah 1989). The court in *Hartmann* held that, to qualify for aggravated robbery, the "use or display of a weapon is not required; threat of such use is sufficient." *Id.* at 547. The court explained that "the legislature's concern with threats to use dangerous weapons during robberies is a legitimate one. Threats instill great fear in victims." *Id.* Here, Reyos was seen by two employees running out of the store with a stolen VCR. The employees ran after Reyos, who was headed toward a car where his brother and their girlfriends were waiting. Reyos reached the car first and got into the backseat. Somebody then yelled, "Start the car, start the car." To prevent Reyos's escape, the employees grabbed the keys out of the ignition. As the employees walked back toward the store with the keys, Reyos and his brother got out of the car and confronted them. A crowd began to gather. Reyos's brother attempted to grab one of the employees, but was restrained by a bystander and held against the car. Reyos grabbed and punched the other employee, but the employee punched Reyos back and pinned him against the car. Reyos then yelled, "Get the gun and shoot," and "shoot to kill." Immediately, the crowd scattered and the employees ran for protection. Based on these facts, we conclude that Reyos's statements were a threat that reasonably "instilled great fear" in the crowd and the employees since they all immediately dispersed. *Id.* The crowd and employees reasonably believed that Reyos's threat "to use a dangerous weapon," Utah Code Ann. § 76–6–302, "capable of causing death or serious bodily injury," *id.* § 76–1–601(5), was real. Otherwise, they would have simply ignored Reyos's threat.

¶ 4 Notwithstanding, Reyos maintains that his statement still was no real threat to anyone because he was not in possession of a weapon, or even capable of gaining possession of a weapon at the time he made the statements. However, "because there is often little or no opportunity for ... victims to defend against threatened attacks, the threats to use a dangerous weapon are particularly terrifying whether or not the perpetrator actually possesses a weapon." *Hartmann,* 783 P.2d at 547. Similarly, this court held that "threatening to use a dangerous weapon during the commission of a robbery, regardless of whether one actually possesses such a weapon, is sufficient for a charge of aggravated robbery." *State v. Adams,* 830 P.2d 310, 313 (Utah Ct.App.1992). Additionally, a representation of a dangerous weapon may include "a statement conveying an im-

pression for the purpose of influencing action." *State v. Candelario*, 909 P.2d 277, 278 (Utah Ct.App.1995).[1] Reyos's statements to "get the gun and shoot" and "shoot to kill" clearly "conveyed an impression" that a gun would be used "for the purpose of influencing action." *Id.* Hence, Reyos did not need to have actual possession of a gun at the time of his threat.

¶ 5 We therefore affirm.

¶ 6 WE CONCUR: PAMELA T. GREENWOOD and GREGORY K. ORME, Judges.

---

1. *State v. Candelario*, 909 P.2d 277 (Utah Ct.App. 1995), called for the court's interpretation of "dangerous weapon," Utah Code Ann. § 76-1-601 (2003), in the context of the "firearm enhancement" provision of Utah Code Annotated section 76-3-203(2).(2003). This court also held that a representation of a dangerous weapon may include both "a verbal or nonverbal statement" that the actor has a weapon. *Candelario*, 909 P.2d at 279.