2006 UT 82

**STATE of Utah, Plaintiff and Respondent,**

v.

**William Joseph IRELAND, Defendant and Petitioner.**

No. 20050600.

Supreme Court of Utah.

Dec. 15, 2006.

against him from simple robbery to aggravated robbery. The court of appeals upheld Ireland's conviction, and we granted certiorari to determine whether a concealed gesture of a hand in a pocket is sufficient to meet the criteria for aggravated robbery under Utah Code section 76–6–302. Finding that Ireland's use of a concealed gesture falls within the express terms of the aggravated robbery statute, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 On December 6, 2003, Ireland entered a jewelry store located in a Salt Lake City shopping mall. When employee Jeffrey Reinkoester greeted him, Ireland responded by saying, "I want you to go and get me all the money in the cash drawer right now." During this exchange, Ireland's hand was in his pocket, pointing toward Reinkoester in a manner Reinkoester described as "gesturing like there was a weapon, but it was more subtle." Although Ireland did not verbally indicate that he had a weapon, Reinkoester speculated that Ireland might have a gun.

¶ 3 Reinkoester then went to the desk where the cash drawer was located. Because the desk was high and blocked Reinkoester's view, Reinkoester could not see whether Ireland's hand remained inside his pocket, and Reinkoester did not see Ireland make any additional gestures. After Reinkoester filled a dark plastic bag with cash, Ireland demanded that the bag be filled with jewelry. Before Reinkoester was able to comply with this demand, however, Ireland grabbed the bag and ran out the front door.

¶ 4 The owner of the jewelry store, Nelson Fortier, unsuccessfully attempted to block Ireland's escape and then chased after him. When Ireland attempted to climb into a waiting cab, Fortier told the cab driver that Ireland had just robbed a jewelry store. Ireland then fled on foot. Fortier eventually caught up to him and demanded that he return the money. Ireland complied and then ran off. He was later arrested.

¶ 5 Ireland was charged with one count of

Mark L. Shurtleff, Att'y Gen., Brett J. Delporto, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Joan C. Watt, Michael A. Peterson, Salt Lake City, for defendant.

PARRISH, Justice:

¶ 1 Defendant William Joseph Ireland seeks review of his conviction for aggravated robbery. Ireland argues that the concealed gesture he used when robbing a jewelry store did not justify elevating the charge

aggravated robbery, a first degree felony,[1] and one count of theft of services, a class B misdemeanor.[2] He moved to reduce the charge of aggravated robbery to simple robbery, a second degree felony, but the district court denied his motion. Ireland pled guilty to the aggravated robbery charge, conditioned on his right to appeal the denial of his motion to reduce the charge to simple robbery. Ireland appealed, and the court of appeals affirmed his conviction.[3] We granted Ireland's petition for a writ of certiorari and have jurisdiction pursuant to Utah Code section 78-2-2(3)(a).

## ANALYSIS

¶ 6 On certiorari, we review the decision of the court of appeals, not that of the district court.[4] Determining whether a defendant's conduct constitutes aggravated robbery is "a legal question of statutory interpretation," which we review for correctness.[5]

¶ 7 Interpreting the aggravated robbery statute requires us to discern "the true intent and purpose of the Legislature."[6] The best evidence of the legislature's "intent and purpose" is the plain language of the statute.[7] When analyzing statutory language, "we presume that the legislature used each word advisedly and give effect to each term according to its ordinary and accepted meaning."[8]

## I. IRELAND'S USE OF A CONCEALED GESTURE CONSTITUTED AGGRAVATED ROBBERY

¶ 8 The crime of aggravated robbery is defined by section 76-6-302 of the Utah Code. It provides that "[a] person commits aggravated robbery if in the course of committing robbery, he: (a) uses or threatens to use a dangerous weapon as defined in Section 76-1-601."[9] Section 76-1-601(5) defines a dangerous weapon as

(a) any item capable of causing death or serious bodily injury; or

(b) a facsimile or representation of the item; and:

(i) the actor's use or apparent intended use of the item leads the victim to reasonably believe the item is likely to cause death or serious bodily injury; or

(ii) the actor represents to the victim verbally or in any other manner that he is in control of such an item.[10]

¶ 9 Our analysis turns on whether Ireland used a dangerous weapon during the robbery. We first address whether Ireland used a "representation of an item" capable of causing death or serious bodily injury as defined by section 76-1-601(5)(b). If so, we must then address whether Ireland's use of such a representation led "the victim to reasonably believe the item [was] likely to cause death or serious bodily injury" or whether he represented "to the victim verbally or in any other manner that he [was] in control of such an item."[11]

### A. A Concealed Gesture Is a Representation Under Utah Code Section 76-1-601(5)

¶ 10 Under section 76-1-601(5), a dangerous weapon can be "any item capable of causing death or serious bodily injury" or "a facsimile or representation of the item" used in a manner specified by subsections (i)

1. Utah Code Ann. § 76-6-302 (2003).

2. Id. § 76-6-409.

3. State v. Ireland, 2005 UT App 209, ¶ 1, 113 P.3d 1028.

4. State v. Warren, 2003 UT 36, ¶ 12, 78 P.3d 590.

5. See State v. Smith, 2005 UT 57, ¶ 6, 122 P.3d 615.

6. State v. Maestas, 2002 UT 123, ¶ 52, 63 P.3d 621 (internal quotation marks omitted).

7. State v. Hunt, 906 P.2d 311, 312 (Utah 1995) (citation and internal quotation marks omitted).

8. Travelers/Aetna Ins. Co. v. Wilson, 2002 UT App 221, ¶ 12, 51 P.3d 1288 (internal quotation marks omitted).

9. Utah Code Ann. § 76-6-302 (2003).

10. Id. § 76-1-601(5).

11. Id. § 76-1-601(5)(b)(i)-(ii).

and (ii).[12] The State contends that Ireland's concealed gesture constitutes a representation of a weapon. We agree.

¶ 11 The plain meaning of the term "representation," as used by section 76–1–601(5), encompasses a gesture. Unlike a facsimile, which is " 'an exact and detailed copy,' "[13] a wide array of items, conduct, and statements can be considered representations.[14] *Black's Law Dictionary* defines a "representation" as "[a] presentation of fact—either by words or by conduct—made to induce someone to act."[15] A representation has also been defined as "[a]n image or likeness of something" or an "account . . . of facts."[16] In context, the use of the term "representation." refers to verbal or nonverbal statements or conduct "conveying an impression for the purpose of influencing action."[17] Because a concealed gun-like gesture is intended to influence a victim to act out of fear for his life or safety, it falls within the definition of representation.

¶ 12 The plain meaning of the word "representation" as used in the statute is buttressed by the available legislative history. The term "representation" was added to the statute in response to this court's decision in *State v. Suniville.*[18] In that case, the defendant pointed his concealed hand at a bank teller and demanded that she give him all her money to prevent the robbery from turning "into a homicide."[19] Under the prior version of the statute, which did not include the term "representation," this court ruled that a "[d]efendant's menacing gesture accompanied by verbal threats is not sufficient evidence alone to establish the use of a firearm or a facsimile of a firearm."[20] The legislature responded to our ruling by adding the term "representation" to the statute, evincing its intent that gestures, at least those accompanied by verbal threats, should be covered by the aggravated robbery statute.

¶ 13 Utah precedent also supports our conclusion that the term "representation" includes concealed gestures and verbal statements. For example, in *State v. Candelario,* the court of appeals affirmed a firearm enhancement, reasoning that even though the defendant did not use an actual firearm, "[t]he plain meaning of the phrase 'the representation of a dangerous weapon' requires that courts apply the firearm enhancement if a defendant makes a verbal or a nonverbal statement that he possesses a firearm."[21] Similarly, in *State v. Reyos,*[22] the court of appeals upheld an aggravated robbery charge, reasoning that "a representation of a dangerous weapon may include a statement conveying an impression for the purpose of influencing action."[23] And in *State v. Hartmann,*[24] we indicated that a charge can be aggravated when a defendant verbally represents that he has a dangerous weapon, reasoning that "[u]se or display of a weapon is not required; threat of such use is sufficient."[25]

¶ 14 The majority of courts from other jurisdictions have similarly held that statutes containing terms such as "representation" are broad enough to encompass verbal

12. *Id.* § 76–1–601(5).

13. *State v. Candelario,* 909 P.2d 277, 279 (Utah Ct.App.1995) (quoting *Webster's Third New Int'l Dictionary* 813 (1986)).

14. *Id.* at 278–79 (indicating that "representation" is "an expansive term" that is subject to "multiple meanings" including "a verbal or nonverbal statement").

15. *Black's Law Dictionary* 1303 (7th ed.1999).

16. *The American Heritage Dictionary of English Language* (4th ed.2004), *available at* http://dictionary.reference.com/browse/representation.

17. *Candelario,* 909 P.2d at 278.

18. 741 P.2d 961 (Utah 1987).

19. *Id.* at 962.

20. *Id.* at 965.

21. 909 P.2d at 279.

22. 2004 UT App 151, 91 P.3d 861.

23. *Id.* ¶ 4 (internal quotation marks omitted).

24. 783 P.2d 544 (Utah 1989).

25. *Id.* at 547; *see also State v. Adams,* 830 P.2d 310, 313–14 (Utah Ct.App.1992) (indicating that the defendant's touching a bulging pocket while

threats, menacing gestures, and the use of everyday objects in a threatening manner. For example, in *Faulkner v. State*,[26] a defendant threatened a victim by placing a sock-covered chisel to her back. The Georgia Court of Appeals upheld the defendant's conviction for armed robbery, reasoning that "he used an article that had the appearance of a gun to persuade [the victim] to comply with his demand and that his acts created a reasonable apprehension on her part that he was threatening her with a gun."[27] Similarly, in *State v. Arena*,[28] the Connecticut Supreme Court indicated that "[t]he state only had to prove that the defendant *represented* by his conduct that he had a firearm" and that he need not actually possess a real firearm.[29] And in *People v. Lopez*,[30] the New York Supreme Court held that "[w]hile the display of what appears to be a firearm test requires a display of something that could reasonably be perceived as a firearm, there is no requirement that the object need be anything other than the defendant's hand."[31]

¶ 15 In this case, Ireland clearly gestured in a menacing manner. Although Ireland did not have a real firearm or even a facsimile of one, he gestured with his concealed hand in order to influence Reinkoester to turn over the money. We accordingly conclude that Ireland's concealed gesture constitutes a representation within the meaning of the statute.

## B. The Use of a Concealed Gesture Meets the Requirements of Subsections (i) and (ii) of Utah Code Section 76–1–601(5)

■ ¶ 16 Having concluded that Ireland's gesture qualifies as a representation, we return to the statutory definition of a dangerous weapon. To qualify as the use of a "dangerous weapon," a defendant's representation must also satisfy one of the following

requirements: (i) the use of the representation must lead "the victim to reasonably believe the item is likely to cause death or serious bodily injury" or (ii) the defendant must represent "to the victim verbally or in any other manner that he is in control of" the representation.[32]

¶ 17 Ireland argues that his conduct did not satisfy either requirement. He reasons that even if a concealed hand gesture qualifies as a representation under the first part of the statute, the structure of the statute and its use of the conjunction "and" requires an additional representation, verbal or otherwise, that the robber is in control of or will use the dangerous weapon. In short, Ireland argues that the statute requires something *in addition to* the mere use of a facsimile or representation.

¶ 18 The way in which section 76–1–601(5) is structured does suggest that subsections (i) and (ii) will add additional requirements beyond what is contained in subsection (5)(b) itself. But the actual verbiage of the subsections belies that suggestion. Indeed, virtually any use of a representation will necessarily satisfy the requirements of either subsection (i) or (ii). For example, one using a "representation" of a dangerous weapon will necessarily represent to the victim "verbally or *in any other manner* that he is in control of such an item" (emphasis added).[33] Similarly, one using a "representation" of a dangerous weapon will almost always use it to lead the victim to believe that "the item is likely to cause death or serious bodily injury."[34] Indeed, in this case, Ireland's representation, almost by definition, satisfies the requirements of both subsections (i) and (ii).

¶ 19 Although the structure of the statute is confusing, we are unwilling to rework the

communicating to a victim that he had a gun was sufficient to constitute aggravated robbery).

**26.** 260 Ga.App. 794, 581 S.E.2d 365, 366–67 (2003).

**27.** *Id.* at 367.

**28.** 235 Conn. 67, 663 A.2d 972 (1995).

**29.** *Id.* at 978 (emphasis in original).

**30.** 135 A.D.2d 443, 522 N.Y.S.2d 145 (App.Div. 1987).

**31.** *Id.* at 146 (citation, internal quotation marks, and brackets omitted).

**32.** Utah Code Ann. § 76–1–601(5)(b) (2003).

**33.** *Id.* § 76–1–601(5)(b)(i).

**34.** *Id.* § 76–1–601(5)(b)(ii).

statutory terms as Ireland suggests.[35] In our interpretive rubric, the plain language of the statute trumps any deference to seemingly contradictory structure. Thus, even though the statutory structure is somewhat inconsistent with its actual language, we will not attempt to rewrite it.

¶ 20 As Ireland rightly states, we try to avoid surplusage in statutory interpretation.[36] But in this case, avoiding the suggestion of surplusage creates untenable interpretive options. Adopting Ireland's plus-factor interpretation would require us to ignore the plain meaning of the language employed by the legislature either by interpreting "representation" in an unduly narrow manner or by ignoring the phrase "in any other manner" found in subsection (b)(i). Another option would be to craft an additional plus factor out of whole cloth, solely on the basis of the statutory structure and the statute's use of the conjunction "and." But creating additional statutory requirements is not our role. Rather, our role is to interpret the statute "according to its literal wording unless it is unreasonably confusing or inoperable."[37]

¶ 21 Ireland also argues that sustaining a conviction for aggravated robbery because of the mere use of a representation destroys the critical distinction between simple and aggravated robbery. While we are sympathetic to Ireland's argument, it is an argument appropriately directed to the legislature rather than to this court. Should the legislature wish to maintain such a distinction or should any part of our "interpretation bring[ ] about a result contrary to the intention of the Legislature, it is a matter for the Legislature to remedy."[38]

¶ 22 Although it is not within our purview to rewrite the statute, we acknowledge the confusing statutory structure and Ireland's concern that the statute destroys the distinction between simple and aggravated robbery, and we encourage the legislature to consider these matters.[39] For example, several states classify robbery in three different tiers: simple robbery, robbery using a facsimile or representation of a dangerous weapon, and robbery using an actual deadly weapon.[40] Such classifications enable these states to maintain a distinction between simple and aggravated robbery, while still punishing the use of representations and facsimiles. In other states, a defendant can be convicted of first degree robbery for using what appears to be a representation of a dangerous weapon; however, the charge drops to second degree robbery if the defendant can show that what appeared to be a dangerous weap-

---

35. *See Gardner v. Chrysler Corp.*, 89 F.3d 729, 736 (10th Cir.1996) (refusing to adopt an interpretation that would "essentially eliminate[ ]" a provision from the statute).

36. *Id.; Chris & Dick's Lumber & Hardware v. Tax Comm'n*, 791 P.2d 511, 516 (1990) (Howe, J., dissenting).

37. *Horne v. Horne*, 737 P.2d 244, 247 (Utah Ct.App.1987) (citations and internal quotation marks omitted); *State v. Ewell*, 883 P.2d 1360, 1363 (Utah Ct.App.1993).

38. *W. Jordan v. Morrison*, 656 P.2d 445, 447 (Utah 1982); *see also Kincheloe v. Coca–Cola Bottling Co.*, 656 P.2d 440, 442 (Utah 1982) ("[A]ny recommended change to [statutory] law should be addressed to the legislature and not the court."); *State v. Gibson*, 908 P.2d 352, 358 (Utah Ct.App.1995) ("Of course, if we have gone further than the Legislature intended, it will be an easy enough matter for the Legislature to revise the statute to better accord with its intent.").

39. *Kawamoto v. Fratto*, 2000 UT 6, ¶ 17 n. 5, 994 P.2d 187; *see also Uzelac v. Thurgood (In re*

*Estate of Thurgood)*, 2006 UT 46, ¶ 36, 144 P.3d 1083 ("[W]e suggest, and indeed encourage, that our state legislature clarify the statute to provide more guidance to courts.").

40. *See, e.g.,* Minn.Stat. § 609.245 (LEXIS through 2005 Sess.) (dividing aggravated robbery into first degree aggravated robbery, which is committed with a dangerous weapon or a facsimile of a dangerous weapon, and second degree aggravated robbery, which is committed through the implication by word or act of having a dangerous weapon); N.D. Cent.Code § 12.1–22–01 (LEXIS through 2005 Sess.) (dividing robbery into class A, B, and C felonies); Or.Rev. Stat. §§ 164.405, .415 (LEXIS through 2005 Sess. of the 73d leg. assembly) (punishing robberies committed with dangerous weapons as robbery in the first degree and robberies with representations as robberies in the second degree); Tenn.Code Ann. §§ 39–13–401 to –403 (LEXIS through 2006 Sess.) (classifying robberies as especially aggravated robbery, aggravated robbery, and robbery).

on was not loaded or was inoperable.[41]

## CONCLUSION

¶ 23 We conclude that Ireland's actions constitute aggravated robbery under our aggravated robbery statute. Ireland's concealed gesture constitutes a representation of a dangerous weapon. Ireland also meets the requirements of subsections (i) and (ii) of the statute inasmuch as he used the representation in a manner that led Reinkoester to reasonably believe the representation was "likely to cause death or serious bodily injury" [42] and he represented to Reinkoester that he was "in control" of the item. We therefore hold that Ireland was properly charged with aggravated robbery and affirm the court of appeals.

¶ 24 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice NEHRING concur in Justice PARRISH's opinion.

41. *See, e.g.,* Conn. Gen.Stat. § 53a–134 (LEXIS through 2006 Supp.) (indicating that a defendant can be found guilty of a first degree felony for using a representation of a dangerous weapon but that "it is an affirmative defense that such [a dangerous weapon] was not a weapon from which a shot could be discharged"); N.Y. Penal Law § 160.15 (LEXIS through ch. 742, 10/31/2006) (indicating that it is an affirmative defense to first degree robbery if a defendant can show that a weapon was not loaded or was inoperable).

42. Utah Code Ann. § 76–1–601(5)(b)(i) (2003).