2011 UT App 260

**STATE of Utah, Plaintiff and Appellee,**

v.

**Jonathan Alexander MEZA, Defendant and Appellant.**

**No. 20090684–CA.**

Court of Appeals of Utah.

Aug. 11, 2011.

Margaret P. Lindsay and Douglas J. Thompson, Provo, for Appellant.

Mark L. Shurtleff and Kenneth A. Bronston, Salt Lake City, for Appellee.

Before Judges DAVIS, THORNE, and CHRISTIANSEN.

MEMORANDUM DECISION

CHRISTIANSEN, Judge:

¶1 Defendant Jonathan Alexander Meza appeals his jury conviction for aggravated robbery, *see* Utah Code Ann. § 76–6–302 (2008). He contends that the trial court erred when it denied his motion for a directed verdict based on its interpretation of what constituted a "dangerous weapon" under Utah Code section 76–1–601, *see id.* § 76–1–601(5)(b) (dangerous weapon statute). Meza also argues that the trial court plainly erred when it failed to reduce his aggravated robbery conviction to simple robbery because the State presented insufficient evidence to prove that "in the course of committing robbery, he ... use[d] or threatene[d] to use a dangerous weapon," *see id.* § 76–6–302(1)(a). We affirm.

¶2 At approximately 5:00 a.m. on August 3, 2008, Meza entered a Maverik gas station store, walked up to the counter, and ordered the clerk and her husband,[1] "Open the draw-

---

1. The clerk was also the assistant operations manager. Her husband happened to be at the

er, this is a stickup." The clerk walked over to the cash register to enter her security code and open the drawer. Meza told the clerk and her husband to keep their hands where he could see them. After the clerk handed Meza the money, he left and she called 911. The clerk testified that she "was afraid that there was a gun and that he could really hurt me." She also testified that even though she "never saw a gun" or "any kind of weapon," and even though Meza "never said he actually had a gun," she thought he had one "[b]ecause he kept his hand in his pocket the whole time and he kept motioning to his hand like he had a gun." The clerk added, "[Meza] kept tilting his head towards his pocket ... making me think that he had something in his pocket." At trial, the clerk testified that she thought Meza had a gun because she saw a shape that looked like a gun in his pocket, yet she admitted that she did not mention this information at the preliminary hearing or in her witness statement. The clerk's husband testified that he was afraid because "[Meza] kept his hand in his pocket." He also stated, "I didn't know if he had a gun. I wanted to go home, I wanted to see my children," and, "Whatever money he got was not worth my life." When asked on direct examination whether there was "anything that made [him] think [Meza] had a gun," the husband replied that "[Meza] kept his hand in his pocket most of the time he was in the store."

¶ 3 At the close of the State's evidence, Meza moved for a directed verdict, arguing that "the [S]tate presented insufficient evidence to tie [him] to the crime." The trial court denied Meza's motion. On appeal, Meza challenges the trial court's interpretation of the aggravated robbery and dangerous weapon statutes in its determination to deny his motion for a directed verdict. He argues that under the correct interpretation of the statutes, the State presented insufficient evidence to show that he used or threatened to use a dangerous weapon. Meza also argues that the trial court plainly erred by refusing to reduce his conviction to

simple robbery because the State presented insufficient evidence to show that he used or threatened to use a dangerous weapon. The State contends that we should review both of Meza's issues on appeal for plain error because he did not specifically request a directed verdict based on insufficient evidence showing that he used or threatened to use a dangerous weapon.

¶ 4 We agree with the State and review both of Meza's issues under a plain error standard. Meza did not properly raise before the trial court his argument that the State presented insufficient evidence to show that he used or threatened to use a dangerous weapon. "As a general rule, claims not raised before the trial court may not be raised on appeal." *State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346. Meza's motion for a directed verdict on the basis that "the [S]tate presented insufficient evidence to tie [him] to the crime" did not sufficiently raise the issue to preserve it for appeal. "Utah courts require specific objections in order to bring all claimed errors to the trial court's attention to give the court an opportunity to correct the errors if appropriate." *State v. Hardy*, 2002 UT App 244, ¶ 14, 54 P.3d 645 (internal quotation marks omitted). Thus, because Meza did not properly preserve the issue now raised on appeal, he must establish that the trial court plainly erred.[2]

¶ 5 We determine that the trial court did not plainly err either in denying Meza's motion for a directed verdict or in refusing to reduce Meza's conviction to simple robbery. "[T]o establish plain error [on the basis of insufficient evidence], a defendant must demonstrate first that the evidence was insufficient to support a conviction of the crime charged and second that the insufficiency was so obvious and fundamental that the trial court erred in submitting the case to the jury." *Holgate*, 2000 UT 74, ¶ 17, 10 P.3d 346. Additionally, Meza's challenge to the trial court's interpretation of the aggravated robbery and dangerous weapon statutes

store visiting with her at the time of the robbery.

2. However, even if we chose to review Meza's challenge to the denial of his motion for a direct-

ed verdict as a challenge to the sufficiency of the evidence, we would deny it for the same reasons that we describe under our plain error review.

presents "a legal question of statutory interpretation, which we review for correctness," *see State v. Ireland,* 2006 UT 82, ¶ 6, 150 P.3d 532 (internal quotation marks omitted) (reviewing the court of appeals's interpretation of the aggravated robbery and dangerous weapon statutes).

¶ 6 "A person commits aggravated robbery if in the course of committing robbery, he ... uses or threatens to use a dangerous weapon as defined in Section 76–1–601." Utah Code Ann. § 76–6–302(1)(a) (2008). In this matter, the State did not claim that Meza used or threatened to use an actual weapon "capable of causing death or serious bodily injury," during the robbery. *See id.* § 76–1–601(5)(a). The sole issue here is whether the State presented sufficient evidence to demonstrate that Meza used or threatened to use "a facsimile or representation of [an] item" because his "use or apparent intended use of the item le[d] the victim[s] to reasonably believe the item [was] likely to cause death or serious bodily injury" or because Meza "represent[ed] to the victim[s] verbally or in any other manner that he [was] in control of such an item," *see id.* § 76–1–601(5)(b).

¶ 7 Utah case law interpreting these statutes is clear. In *State v. Ireland,* 2006 UT 82, 150 P.3d 532, the Utah Supreme Court interpreted the plain meaning of the term " 'representation,' as used in section 76–1–601(5)(b), [to] encompass[ ] a gesture," *id.* ¶ 11; "as '[a] presentation of fact—either by words or by conduct—made to induce someone to act,' " *id.* (alteration in original) (quoting *Black's Law Dictionary* 1303 (7th ed. 1999)); and as "verbal or nonverbal statements or conduct 'conveying an impression for the purpose of influencing action,' " *id.* (quoting *State v. Candelario,* 909 P.2d 277, 278 (Utah Ct.App.1995)); *see also* Utah Code Ann. § 76–1–601(5)(b) (2003) (defining a "dangerous weapon" to include a "representation of an item"). In *Ireland,* where the defendant gestured with his hand inside his pocket "like there was a weapon," the supreme court held that even though the defendant did not verbally represent that he carried a weapon, his "concealed gun-like gesture [wa]s intended to influence a victim

to act out of fear for his life or safety" and therefore "falls within the definition of representation." *Ireland,* 2006 UT 82, ¶¶ 2, 11, 150 P.3d 532. The supreme court also clarified section 76–1–601(5)(b) by explaining that "virtually any use of a representation will necessarily satisfy the requirements of either subsection (i) or (ii)." *Id.* ¶ 18; *see also* Utah Code Ann. § 76–1–601(5)(b) (defining "dangerous weapon" as "a facsimile or representation of the item, if: (i) the actor's use or apparent intended use of the item leads the victim to reasonably believe the item is likely to cause death or serious bodily injury; or (ii) the actor represents to the victim verbally or in any other manner that he is in control of such an item"). In other words, by definition, "one using a 'representation' of a dangerous weapon will almost always use it to lead the victim to believe that 'the item is likely to cause death or serious bodily injury.' " *Ireland,* 2006 UT 82, ¶ 18, 150 P.3d 532 (quoting Utah Code Ann. § 76–1–601(5)(b)(i)). Likewise, "one using a 'representation' of a dangerous weapon will necessarily represent to the victim 'verbally or in *any other manner* that he is in control of such an item.' " *Id.* (emphasis in original) (quoting Utah Code Ann. § 76–1–601(5)(b)(ii)).

¶ 8 Here, Meza's conduct of keeping his hand in his pocket almost the entire time he was in the store, while tilting his head toward his hand, and his verbal command, "Open the drawer, this is a stickup" constitute a representation of a dangerous weapon. Meza's representation reasonably led the victims to believe that "the item [wa]s likely to cause death or serious bodily injury," *see* Utah Code Ann. § 76–1–601(5)(b)(i) (2008), and that he was "in control of such an item," *see id.* § 76–1–601(5)(b)(ii). Because the State presented sufficient evidence to show that Meza used or threatened to use a dangerous weapon, the trial court did not plainly err by denying Meza's motion for a directed verdict and by not reducing his conviction to simple robbery.

¶ 9 Utah case law also clearly interprets Utah Code sections 76–6–302(1)(a) and 76–1–601(5)(b)(ii) to mean that a person can *verbally* represent that he or she intends to use

a dangerous weapon. *See State v. Reyos*, 2004 UT App 151, ¶¶ 3–4, 91 P.3d 861 (mem.) (affirming an aggravated robbery conviction where, during the course of a robbery, the defendant yelled, "Get the gun and shoot," and "[S]hoot to kill," even though he did not possess a weapon, because "the threat . . . reasonably instilled great fear in the crowd" as indicated by their immediate dispersal (internal quotation marks omitted)); *State v. Adams*, 830 P.2d 310, 313–14 (Utah Ct.App. 1992) (affirming an aggravated robbery conviction even though the defendant did not carry a gun because the defendant's threats to shoot the victim, combined with his act of putting his hand on a bulging pocket, led the victim to reasonably believe that the defendant had a gun and would seriously injure her), *cert. denied*, 843 P.2d 1042 (Utah 1992); *cf. State v. Hartmann*, 783 P.2d 544, 547 (Utah 1989) (affirming an aggravated burglary conviction after concluding that the defendant's threat to use, even without actual use or display of, a dangerous weapon was sufficient).

¶ 10 Clearly, Meza verbally threatened to use a dangerous weapon when he commanded the clerk and her husband, "Open the drawer, this is a stickup." "Stickup" commonly refers to "a robbery at gunpoint." *See Merriam–Webster's Collegiate Dictionary* 1225 (11th ed. 2003). Moreover, "[t]hreats instill great fear in victims. Because there is often little or no opportunity for burglary [or robbery] victims to defend against threatened attacks, the threats are particularly terrifying whether or not the perpetrator actually possess a weapon." *Hartmann*, 783 P.2d at 547. Although some of the evidence was contradictory,[3] the State presented sufficient evidence for the jury to have reasonably determined that in combination with his body language and physical manifestations, the store clerk and her husband perceived Meza's verbal representation as an indication that he controlled a gun.

¶ 11 Accordingly, we affirm the trial court's interpretation of the aggravated rob-

bery and dangerous weapon statutes. We also hold that Meza has not met the first prong of the plain error standard by demonstrating that "the evidence was insufficient to support a conviction" of aggravated robbery. *See State v. Holgate*, 2000 UT 74, ¶ 17, 10 P.3d 346. The State presented sufficient evidence to prove that "in the course of committing robbery," Meza "use[d] or threaten[d] to use a dangerous weapon," *see* Utah Code Ann. § 76–6–302(1), and thus, the trial court did not plainly err by denying Meza's motion for a directed verdict or by failing to reduce Meza's aggravated robbery conviction to simple robbery.

¶ 12 Affirmed.

¶ 13 WE CONCUR: JAMES Z. DAVIS, Presiding Judge, and WILLIAM A. THORNE, JR., Judge.

---

**3.** The surveillance videos show Meza using both of his hands at different times to collect the money and to open the door to the store and show that the height of the counter may have

made it difficult for the clerk to actually see where Meza's hands were while he was standing at the counter.