2014 COA 78

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Enrique Alejandro LACALLO, Defendant–Appellant.**

**Court of Appeals No. 12CA0001**

Colorado Court of Appeals, Div. IV.

Announced June 19, 2014

John W. Suthers, Attorney General, Brock J. Swanson, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Carolyn A. Blanchard, Crested Butte, Colorado, for Defendant–Appellant

Opinion by JUDGE WEBB

¶ 1 Defendant, Enrique Alejandro Lacallo, appeals the judgment of conviction entered on a jury verdict finding him guilty of obstructing a law enforcement animal, felony menacing, rioting in a detention facility, engaging in a riot, possession of contraband, criminal mischief, and disobeying a public safety order during a riot. He also appeals his sentence.

■ ¶ 2 This appeal primarily involves the conviction for violating the general riot statute, section 18–9–104(1), C.R.S.2013, and the definition of riot included in this statute. Addressing an undeveloped question in Colorado, we consider applying plain error review to a sufficiency of the evidence challenge under narrow circumstances: where trial counsel conceded that the evidence was sufficient (except for a factual issue not raised in this appeal), and appellate review of the evidence depends on a legal interpretation of a statutory element raised for the first time by appellate counsel. In this limited context, we agree with the Attorney General that the sufficiency issue presented was unpreserved, and is subject to only plain error review.[1] We affirm the judgment of conviction, but vacate the sentence and remand for resentencing.

1. Because of the unusual circumstances presented, we respectfully disagree with the dissent's suggestion that we have adopted a "sea change." Cf. *People v. Gutierrez*, 222 P.3d 925, 945–46 (Colo.2009) (characterizing evolution of the "good faith" exception to the exclusionary rule as a "sea change").

## I. Background

¶ 3 According to the prosecution's evidence, defendant and three other inmates refused to leave a common area of the Jefferson County jail and lockdown. Before being returned to their cells, they damaged the common area. During the disruption, visiting members' of the public were evacuated from the jail.

## II. Sufficiency of the Evidence

¶ 4 Defendant first contends the evidence was insufficient to support his conviction for engaging in a riot under section 18–9–104(1). He argues that because this charge rested solely on acts which occurred inside a detention facility, those acts cannot constitute a "public disturbance" under the definition of "riot" in section 18–9–101(2), C.R.S.2013. Because defendant did not raise this contention below, we apply the plain error standard of review and conclude that the error alleged was not obvious under existing law. Thus, we do not address the merits of this contention.

### A. Standard of Review and Preservation

¶ 5 In moving for a judgment of acquittal, defense counsel did not broadly challenge the sufficiency of the evidence. To the contrary, as to the rioting in a detention facility count, he said, "I'm not going to belabor the whole point because *I think they['ve] got me on the rioting part* ... but they don't have him for purposes of this on employing a deadly weapon ... [because] nobody can put one of those knife-like shards of glass in [defendant's] hand." (Emphasis added.) Then as to the count for engaging in a riot, he said, "again, my argument is the same, your honor," and reiterated the shards assertion.

¶ 6 Thus, counsel did not expressly or even impliedly raise the issue now argued—that the evidence was insufficient to show a public disturbance—as a matter of either fact or law.[2] *See People v. Rogers*, 2012 COA 192,

2. Because the Attorney General did not argue that by telling the trial court "they['ve] got me on the rioting part," defendant waived any sufficiency challenge or invited the court's alleged error, we decline to address these issues sua sponte. *See State v. Greene*, 147 P.3d 957, 959 n. 3 (Utah Ct.App.2006) ("[W]e do not determine whether

¶ 24, 317 P.3d 1280 ("An issue is unpreserved for review when an objection or request was made to the trial court, but on different grounds than those raised on appeal."). Thus, we must decide whether the trial court plainly erred "in failing sua sponte to direct defendant's acquittal based on that ground." *State v. Serrano,* 355 Or. 172, 183–84, 324 P.3d 1274 (2014).[3]

¶ 7 Even so, in Colorado sufficiency of the evidence may be raised for the first time on appeal. *See Morse v. People,* 168 Colo. 494, 498, 452 P.2d 3, 5 (1969) ("The one new matter urged upon us in this court which can be adequately reviewed on the basis of the record now before us concerns the sufficiency of the evidence."); *People v. Garcia,* 2012 COA 79, ¶ 35, 296 P.3d 285 ("A defendant may challenge the sufficiency of the evidence without moving for a judgment of acquittal in the trial court."); *People v. Duncan,* 109 P.3d 1044, 1045 (Colo.App.2004) ("[A] sufficiency of the evidence claim may be raised for the first time on appeal...."); *People v. Peay,* 5 P.3d 398, 400 (Colo.App.2000) ("reject[ing] the People's contention that defendant failed to preserve the issue of the sufficiency of the evidence ... because he failed to raise it in his motion for acquittal").

¶ 8 Despite this uniformity, Colorado courts addressing unpreserved sufficiency challenges have not applied a consistent standard of review. When a criminal defendant fails to raise an issue below, review is limited to plain error. *See generally People v. Miller,* 113 P.3d 743, 749–50 (Colo.2005).

¶ 9 Even before *Miller,* some divisions of this court had applied plain error review to sufficiency claims. *See People v. Rice,* 40 Colo.App. 357, 361, 579 P.2d 647, 650 (1978) ("[D]efendant did not ... make any claims on his motion for acquittal that the evidence was insufficient to link him to these crimes. Since we find no plain error with respect to these convictions, we do not address the is-

sue of the sufficiency of the evidence relative to them."); *see also People v. Harris,* 633 P.2d 1095, 1099 (Colo.App.1981) ("[T]o allege insufficiency of evidence as to an indispensable element of a crime is to assert plain error."). More recently, and despite *Miller,* other divisions have expressly declined to do so. *See People v. Randell,* 2012 COA 108, ¶ 30, 297 P.3d 989 ("[W]e reject the People's contention that the insufficient evidence claims defendant failed to raise in the trial court should only be reviewed for plain error."); *People v. McBride,* 228 P.3d 216, 226 (Colo.App.2009) (same).

¶ 10 A third category of Colorado cases applies a de novo scope of review to unpreserved sufficiency claims, without considering applicability of the plain error standard of review. *See, e.g., Garcia,* ¶ 35; *Duncan,* 109 P.3d at 1045. Such cases do not inform our analysis because de novo review can be applied under plain error. *See People v. Wylie,* 260 P.3d 57, 60 (Colo.App.2010) ("Because defendant did not raise this issue in the trial court, we review for plain error.... To the extent defendant's arguments require us to interpret statutory provisions, we do so de novo." (citations omitted)); *see also United States v. Garza–Lopez,* 410 F.3d 268, 272–73 (5th Cir.2005) ("In reviewing Garza–Lopez's claim of plain error, we begin by determining whether the district court committed an error and whether that error was plain. In resolving Garza–Lopez's claim that the district court erred by misapplying § 2L 1.2(b)(1)(A), we review the district court's interpretation and application of the Guidelines de novo." (citation omitted)); *Whittle v. State,* 77 A.3d 239, 243 (Del.2013) ("We review alleged prosecutorial misconduct, such as improper vouching, for plain error where the defendant did not object to the asserted prosecutorial misconduct at trial, and the trial judge failed to intervene sua sponte. In plain error review, we examine the record de novo to determine whether prosecutorial misconduct occurred.") (footnote omitted).[4]

the invited error doctrine applies to Defendant's insufficient evidence claim here because the issue was not fully briefed by the parties nor urged by the State on appeal.").

3. We express no opinion whether, absent such a concession, a general assertion that the evidence was insufficient would preserve a legal question

concerning interpretation of an element, as is presented here.

4. No Colorado criminal case has articulated the difference between standard of review and scope of review. But while

¶ 11 Our supreme court has not spoken to this question.[5] Lacking its guidance, we join with *Rice* and *Harris* in applying the plain error standard of review, based on the following four reasons.

¶ 12 First, the wording of Crim. P. 52(b) does not support an exception for sufficiency claims that a defendant fails to bring "to the attention of the court." True, a conviction based on insufficient evidence would be a very grave error. But analogous Fed. R.Crim.P. 52(b) "does not permit exceptions based on the gravity of the asserted error." *United States v. Turrietta*, 696 F.3d 972, 976 n. 9 (10th Cir.2012); *see Johnson v. United States*, 520 U.S. 461, 466, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) ("the seriousness of the error claimed does not remove consideration of it from the ambit of the Federal Rules of Criminal Procedure.").

¶ 13 Second, *Rice* and *Harris* are in accord with the position of federal courts. *See* 2A Charles Alan Wright, *Federal Practice & Procedure* § 469 (3d ed.2000) (referencing the "well-settled doctrine that if no motion for judgment of acquittal was made ... an appellate court cannot review the sufficiency of the evidence, except under the plain error doctrine").

¶ 14 Third, many states apply a plain error standard of review to unpreserved sufficiency of the evidence claims.[6] Much of the seemingly contrary authority—like the third category of Colorado cases—reviews unpreserved sufficiency of the evidence claims under a de novo scope of review, without considering the plain error standard of review.[7]

¶ 15 Fourth, applying only plain error review to unpreserved sufficiency claims furthers the policies supporting this limited review. As explained in *Hagos v. People*, 2012 CO 63, 288 P.3d 116:

> Plain error review reflects "a careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly

---

the terms "scope of review" and "standard of review" are sometimes used interchangeably, there is undoubtedly a difference between them. Our "scope of review" relates to what we will consider in determining whether [an error was] committed[.] Our "standard of review" relates to how much, if any, deference to afford ... in determining whether an error was made.

*Porter v. Comm'r*, 130 T.C. 115, 144 n. 1 (2008) (Wherry, J., concurring in the result). *See also Morrison v. Commonwealth*, 538 Pa. 122, 646 A.2d 565, 570 (1994) ("'Scope of review' and 'standard of review' are often—albeit erroneously—used interchangeably. The two terms carry distinct meanings and should not be substituted for one another. 'Scope of review' refers to 'the confines within which an appellate court must conduct its examination.' In other words, it refers to the matters (or 'what') the appellate court is permitted to examine. In contrast, 'standard of review' refers to the manner in which (or 'how') that examination is conducted." (citation omitted)). For these reasons, plain error review and de novo review are in no way mutually exclusive. *See, e.g., United States v. Rounds*, 749 F.3d 326, 337 (5th Cir.2014) ("The plain-error standard requires first that there be error, a question we consider de novo.").

5. In both *People v. Roggow*, 2013 CO 70, ¶ 13, 318 P.3d 446, and *Dempsey v. People*, 117 P.3d 800, 807 (Colo.2005), because insufficiency of the evidence was raised below, *People v. Roggow*, 2011 WL 2199694 (Colo.App. No. 09CA1719, May 26, 2011) (not published pursuant to C.A.R.

35(f)), *Dempsey*, 117 P.3d at 804, plain error review could not have been applied.

6. *See, e.g., Ziegler v. State*, 886 So.2d 127, 143 (Ala.Crim.App.2003); *Shafer v. State*, 456 P.2d 466, 467–68 (Alaska 1969); *Monroe v. State*, 652 A.2d 560, 563 (Del.1995); *Brannon v. United States*, 43 A.3d 936, 939 (D.C.2012); *State v. Rodrigues*, 6 Haw.App. 580, 733 P.2d 1222, 1223 (1987); *People v. Horn*, 279 Mich.App. 31, 755 N.W.2d 212, 220 (2008); *Jones v. State*, 724 So.2d 427, 430 (Miss.Ct.App.1998); *State v. Swinford*, 677 S.W.2d 417, 418 (Mo.Ct.App. 1984); *State v. Thompson*, 244 Neb. 375, 507 N.W.2d 253, 270 (1993); *State v. Bullitt*, 166 Ohio App.3d 365, 850 N.E.2d 801, 804 (2006); *State v. Reynolds*, 250 Or.App. 516, 280 P.3d 1046, 1054 (2012); *State v. Meza*, 263 P.3d 424, 426 (Utah Ct.App.2011); *State v. Savo*, 139 Vt. 644, 433 A.2d 292, 293 (1981); *but see State v. Thomas*, 62 Conn.App. 356, 772 A.2d 611, 615 (2001); *Pena v. State*, 294 P.3d 13, 18 n. 2 (Wyo.2013).

7. *See, e.g., State v. Wright*, 154 Idaho 157, 295 P.3d 1016, 1017 n. 1 (App.2013); *State v. Foster*, 298 Kan. 348, 312 P.3d 364, 368 (2013); *Commonwealth v. Joyner*, 467 Mass. 176, 4 N.E.3d 282, 288 (2014); *State v. Criswell*, 370 Mont. 511, 305 P.3d 760, 763 (2013); *State v. Stein*, 127 N.M. 362, 981 P.2d 295, 297 (App.1999); *State v. Martinez*, —— N.C.App. ——, 749 S.E.2d 512, 514 (2013); *Musgrove v. State*, 422 S.W.3d 13, 15 n. 1 (Tex.App.2013).

redressed." Plain error review allows the opportunity to reverse convictions in cases presenting particularly egregious errors, but reversals must be rare to maintain adequate motivation among trial participants to seek a fair and accurate trial the first time.

*Id.* at ¶ 23 (citation omitted). Requiring defendants to raise issues before the trial court "conserve[s] judicial resources by alerting the trial court to a particular issue in order to give the court an opportunity to correct any error." *People v. Pahl,* 169 P.3d 169, 183 (Colo.App.2006). For example, the trial court could exercise its discretion and allow the prosecution to present additional evidence. *People v. Waters,* 641 P.2d 292, 294 (Colo.App.1981) ("The prosecutor's failure to introduce evidence prior to closing his case was an inadvertent oversight, and the court's action in permitting him to reopen his case-in-chief was within its discretion.").[8]

¶ 16 Raising sufficiency before the trial court conserves judicial resources because a ruling that the evidence was insufficient would obviate the need for the defendant to appeal any other issue concerning that charge. *Duncan,* 109 P.3d at 1047 ("Because there is insufficient evidence that the prosecution proved every element of the offense charged, defendant's conviction must be reversed. Accordingly, we need not address defendant's remaining arguments.").[9] *See People v. Houser,* 2013 COA 11, ¶ 36, 337 P.3d 1238 (judicial economy includes "the efficiency that could have been achieved by raising the issue earlier").

¶ 17 Defendant does not raise any countervailing policy considerations. Instead, he argues that applying plain error review to unpreserved sufficiency claims would deny him due process, because the United States Constitution "requires proof of guilt beyond a reasonable doubt for a conviction to stand." Defendant's reliance on *Duncan* to support this statement is misplaced. While the division reviewed an unpreserved sufficiency claim de novo, it did so without addressing any purported conflict between due process and plain error review. *Id.* at 1045. Merely using the de novo scope of review does not establish it as a due process requirement.[10]

¶ 18 And even if de novo review of the sufficiency of the evidence has due process implications, defendant's constitutional argument against plain error still fails under *Miller,* 113 P.3d at 749 (holding plain error review appropriate for unpreserved claims, including those asserting constitutional violations). *See Hagos,* ¶ 14 (with certain exceptions not relevant here, appellate courts review all "errors, constitutional and nonconstitutional, that were not preserved by objection for plain error").[11]

8. Other jurisdictions have recognized trial court discretion to do so. *United States v. Rouse,* 111 F.3d 561, 573 (8th Cir.1997) ("The trial court has broad discretion to allow the prosecution to reopen to establish an element of an offense after the defendant has moved for judgment of acquittal."); *see also Commonwealth v. Hurley,* 455 Mass. 53, 913 N.E.2d 850, 863–64 (2009) (collecting cases).

9. The specter of a post-conviction proceeding asserting ineffective assistance of counsel sometimes factors into the judicial economy calculus. *See Estep v. People,* 753 P.2d 1241, 1248 (Colo. 1988) ("to require the defendant to pursue that means of redress would not serve the interests of substantial justice and judicial economy" (citation omitted)). Even so, this factor has only displaced plain error analysis where counsel was clearly ineffective. *See id.; People v. Baker,* 104 P.3d 893, 898 (Colo.2005). Otherwise, the supreme court has not avoided plain error review based on the possibility of a post-conviction proceeding. *See Hagos v. People,* 2012 CO 63, ¶ 21, 288 P.3d 116 ("A prior determination ... that an error was not so prejudicial as to cast serious doubt upon the reliability of the judgment of conviction, and therefore was not plain error, does not control a later determination of whether the error undermined confidence in the judgment of conviction under *Strickland.*"). And here, because of the absence of Colorado law, as discussed in the following subsection, analysis of trial counsel's failure to raise sufficiency below would differ from trial counsels' patent untimeliness at issue in *Estep* and *Baker.*

10. *See, e.g., Delgado,* 672 F.3d at 331 ("[T]he Constitution does not require that the sufficiency of the evidence be subject to de novo review in all cases. We routinely review constitutional claims under otherwise-applicable, deferential standards of review, and it is a truism that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.").

11. Since *Miller,* divisions of this court have applied plain error review to alleged constitutional

¶19 But does applying the plain error standard of review to unpreserved sufficiency claims have any practical significance? The answer depends on which of the three plain error questions is the focus of appellate inquiry: whether error occurred; if so, whether it was obvious; and if both, whether the error casts serious doubt on the reliability of the judgment of conviction. *See, e.g., People v. Duran,* 272 P.3d 1084, 1094 (Colo.App. 2011) (listing plain error factors). Here, applying plain error matters because our inquiry is limited to obviousness.

¶20 Many federal circuits have expressed uncertainty over exactly how plain error review should be applied when weighing the sufficiency of the evidence. For example, in *United States v. White,* 1 F.3d 13, 17 (D.C.Cir.1993), the court explained:

> We admit we are not sure exactly what standard is implied by plain error review on a sufficiency of the evidence challenge. Presumably review should be more deferential than under the usual standard under which we determine only "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original). But it is hard to imagine that more deferential standard.[12]

*McBride,* 228 P.3d at 226, used similar reasoning to reject plain error review: the *Jackson* "standard is so high, and the consequences to the rare defendant able to satisfy it so severe, that we apply it even where (as here) a defendant failed to preserve the challenge by raising it in the trial court."

¶21 Under the plain error standard of review, weighing the sufficiency of the evidence would implicate both the first question—did the trial court err in not sua sponte dismissing the case when the prosecution rested, and the third question—is the reliability of the judgment of conviction in doubt? But because our focus is on the intermediate question—was the error obvious—we save for another day deciding whether analyzing either of the other questions is different when sufficiency arises for the first time on appeal. *See United States v. Meadows,* 91 F.3d 851, 855 (7th Cir.1996) ("We do not review the sufficiency of the evidence de novo when there was no objection at trial; it must be 'plain' (i.e., clear or obvious) that there was insufficient evidence.").

¶22 Under the plain error standard of review, the error must "be so clear-cut, so obvious, that a trial judge should be able to avoid it without benefit of objection." *People v. Pollard,* 2013 COA 31, ¶39, 307 P.3d 1124. As explained in *United States v. Delgado,* 672 F.3d 320, 332 (5th Cir.2012):

> Even assuming ... that the final two prongs of the plain-error analysis are al-

---

violations. *See, e.g., People v. Lientz,* 2012 COA 118, ¶10, 317 P.3d 1215 (challenge to court's statutory and constitutional authority to impose probation conditions); *People v. SandovalCandelaria,* No. 07CA0759, 2011 WL 2186433, at *11 (Colo.App. May 26, 2011) ("constitutional right to speedy sentencing"), *rev'd on other grounds,* 2014 CO 21, 321 P.3d 487; *People v. Banark,* 155 P.3d 609, 611 (Colo.App.2007) (constitutional challenge to sentencing procedure).

**12.** *Compare United States v. Goode,* 483 F.3d 676, 681 n. 1 (10th Cir.2007) ("[A] conviction in the absence of sufficient evidence of guilt is plainly an error, clearly prejudiced the defendant, and almost always creates manifest injustice."), *United States v. Duran,* 133 F.3d 1324, 1335 n. 9 (10th Cir.1998) ("[R]eview under the plain error standard ... and a review of sufficiency of the evidence usually amount to largely the same exercise."), *United States v. Vizcarra–Martinez,* 66 F.3d 1006, 1010 (9th Cir.1995) (explaining that it could not "envision a case in which the result would be different because of the application of one rather than the other of the standards of review"), and *United States v. Bowie,* 892 F.2d 1494, 1496–97 (10th Cir.1990) ("When considering the sufficiency of the evidence to support the verdict, we have stated the plain error standard in different words, but the standard actually applied is essentially the same as if there had been a timely motion for acquittal." (citations omitted)), *with United States v. Herrera,* 313 F.3d 882, 885 (5th Cir.2002) (plain error review "is limited to determining whether ... the record is devoid of evidence pointing to guilt"), *United States v. Hernandez,* 227 F.3d 686, 694 (6th Cir.2000) (same), and *United States v. Owens,* 301 F.3d 521, 528 (7th Cir.2002) (explaining that plain error "is present only if [the] convictions amount to a manifest miscarriage of justice," which in the sufficiency context means "the record is devoid of evidence pointing to guilt, or if the evidence on a key element of the offense was so tenuous that a conviction would be shocking").

ways satisfied when a defendant is convicted on insufficient evidence, prong two—the requirement that the error be plain, clear, or obvious—must be satisfied, and this requirement imposes a greater burden on forfeited claims.[13]

See also United States v. Smart, 135 Fed. Appx. 337, 341 (11th Cir.2005) (unpublished) ("Assuming without deciding whether the district court committed error, we conclude that [the defendant's] claim of insufficiency as a matter of law fails under the second prong of the plain error test."); State v. Samples, 272 P.3d 788, 791 (Utah Ct.App. 2012) ("Because this case comes before us on plain error review ... we need only decide whether the alleged insufficiency of the evidence was such that it was an obvious and fundamental error to submit the case to the jury." (internal quotation marks and citation omitted)).

¶ 23 In many sufficiency cases, if the record convinced the appellate court that the trial court had erred in not sua sponte dismissing the charges, the record would likely also show that this error was obvious. But here, obviousness depends on the meaning of "public disturbance," a legal issue that must be resolved before weighing the evidence under a de novo scope of review to determine if the trial court erred in not sua sponte dismissing the general riot count. And "[w]e need not decide whether the court actually erred if it is clear that the alleged error was not obvious." People v. Vigil, 251 P.3d 442,

447 (Colo.App.2010); see Garcia, ¶ 48 ("[E]ven if we assume the instruction was erroneous, we are not persuaded ... that any instructional error here was obvious and substantial.").[14]

¶ 24 Therefore, reviewing defendant's unpreserved sufficiency of the evidence challenge for plain error, we begin with obviousness, and go no further.

### B. Applying Plain Error

■ ¶ 25 As indicated, defendant asserts that the prosecution failed to prove a "public disturbance" under section 18–9–101(2) because a detention facility is not a place open to the public. The Attorney General responds that the location of the riot is immaterial—such a disturbance occurs if a riot affects members of the public, which defendant's conduct did when jail visitors had to be evacuated. We conclude that because defendant's argument fails the obviousness requirement of plain error, we need not reach this question.

¶ 26 Generally, an error is not obvious, and therefore cannot be plain, where "nothing in our statutes or previous case law would have alerted the court" to the error. People v. Mendoza, 313 P.3d 637, 641 n. 4 (Colo.App. 2011); see People v. Zubiate, 2013 COA 69, ¶ 24 ("An error may be obvious if the issue has been decided by a division of this court or the Colorado Supreme Court, or if the

---

**13.** In federal courts, plain error requires: "(1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights." *United States v. Scull,* 321 F.3d 1270, 1277 (10th Cir.2003) (quoting *United States v. Hughes,* 191 F.3d 1317, 1322 (10th Cir.1999)). And if these criteria are satisfied, the "[c]ourt may exercise discretion to correct the error if it seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* This final prong of federal plain error has not been adopted by our supreme court. *But see People v. Greer,* 262 P.3d 920, 937 (Colo.App. 2011) (J. Jones, J., specially concurring). Even so, here our analysis relies solely on the second prong of plain error—obviousness—which both Colorado and federal courts apply.

**14.** *See, e.g., United States v. Hillman,* 642 F.3d 929, 937 (10th Cir.2011) ("Even assuming an error ... [the defendant] cannot satisfy his obligation to show that [it] was ... 'clear or obvious

under current law.' " (quoting *United States v. Goode,* 483 F.3d 676, 681 (10th Cir.2007))); *United States v. Rios–Hernandez,* 645 F.3d 456, 463 (1st Cir.2011) ("Assuming, without deciding, that an error occurred, we find that [the defendant] does not satisfy the second criterion of the plain error standard."); *United States v. Blackwell,* 459 F.3d 739, 772 (6th Cir.2006) ("Assuming, without deciding, that the imposition of the term in this case constituted error, we do not find that the error was 'plain' or obvious."); *United States v. Ellis,* 326 F.3d 593, 596 (4th Cir.2003) ("We need not decide whether an error occurred here because we conclude that any such error was not ... 'clear' or 'obvious.' "); *United States v. Graham,* 317 F.3d 262, 270 (D.C.Cir.2003) ("Given the lack of clarity concerning the standard, even assuming error by the district court in applying the preponderance of evidence standard, any error was neither a 'clear' nor 'obvious' error.").

trial court has erroneously applied statutory law.").

¶ 27 Consistent with this approach, federal courts have held that error, if any, in an unpreserved sufficiency of the evidence claim is not plain if the legal principles with which the evidence must be tested are undecided. In *United States v. Kimler,* 335 F.3d 1132, 1142 (10th Cir.2003), for example, the court explained that authority cited by the defendant did not establish the broad rule of evidence that he was asserting. And "[t] he only two circuits to have considered the issue" did not apply such a rule. *Id.* Then it rejected the defendant's unpreserved sufficiency claim because, even assuming that his evidentiary challenge had merit, the error was not plain. *Id.*

¶ 28 Similarly, in *United States v. Ramos–Arenas,* 596 F.3d 783, 786 (10th Cir.2010), the court held that even if "the government presented insufficient evidence of intent to defraud, that error is neither clear nor obvious" because "[w]hether a conviction ... requires evidence of intent to defraud is an open question in this circuit." *See also United States v. McRae,* 702 F.3d 806, 835–36 (5th Cir.2012) (rejecting unpreserved sufficiency challenge because "[w]e are not aware of any United States Supreme Court or Fifth Circuit precedent addressing this issue, much less resolving the issue in [defendant's] favor."); *United States v. Merino,* 545 Fed. Appx. 867, 869 (11th Cir.2013) (unpublished) (rejecting unpreserved sufficiency challenge because "error, if any, is not plain or obvious because no court has interpreted the law as [the defendant] urges").

¶ 29 No Colorado case has interpreted the phrase "public disturbance" under section 18–9–101(2). Nor do Colorado cases provide a commonly accepted definition for the term "public" that would have alerted the trial court to alleged error arising from defendant's interpretation. *See, e.g., Wycoff v. Grace Cmty. Church of Assemblies of God,* 251 P.3d 1260, 1273 (Colo.App.2010) (public

means "the people as a whole: populace, masses").

¶ 30 Neither party cited section 18–1–901(3)(n), C.R.S.2013, which defines a "public place" as:

> [A] place to which the public or a substantial number of the public has access, and includes but is not limited to highways, transportation facilities, schools, places of amusement, parks, playgrounds, and the common areas of public and private buildings and facilities.

But this definition does not make the alleged error in failing sua sponte to dismiss this count obvious. Had the General Assembly intended for section 18–9–101(2) to apply to only a "public place," rather than to a "public disturbance," regardless of the location, it could have said so. *See Vigil v. Franklin,* 103 P.3d 322, 330 (Colo.2004) ("[H]ad the General Assembly intended to limit the preemption of landowner liability by retaining the open and obvious danger doctrine, it could have done so."). Thus, because determining the meaning of "public disturbance" under existing Colorado authority would be difficult, "the alleged error cannot be regarded as plain or obvious." *See Vigil,* 251 P.3d at 447

¶ 31 Still, an unpreserved error might be obvious if it involves a well-settled legal principle that numerous courts elsewhere have uniformly embraced. *See Pollard,* ¶ 41. But here, defendant has not cited out-of-state authority supporting his narrow interpretation ·of "public disturbance," nor have we found any.[15]

¶ 32 For these reasons, we conclude that error, if any, was not obvious. Based on this conclusion, we need not address the merits of defendant's sufficiency of the evidence claim. *See People v. Hagos,* 250 P.3d 596, 620 (Colo. App.2009) ("Because no error was plain or obvious at the time of defendant's trial, it follows that there is no plain error here.").

---

15. The few cases to have addressed this issue hold, as the Attorney General argues, that a riot in a detention facility may be a public disturbance if it "encompasses events relating to or affecting the people of an organized community." *United States v. Bridgeman,* 523 F.2d 1099, 1114 (D.C.Cir.1975) (internal quotation marks omitted); *see also Commonwealth v. Zwierzelewski,* 177 Pa.Super. 141, 110 A.2d 757, 760 (1955) ("disturbance of the peace" included disturbance that "took place within the walls and on the grounds of a penitentiary").

### III. Merger

¶ 33 Alternatively, defendant contends that even if sufficient evidence supports his conviction for engaging in a riot, because it is a lesser included offense of rioting in a detention center, the convictions should merge. The different elements of these two offenses defeat this contention.

¶ 34 Whether an offense is lesser included or nonincluded is determined, as a matter of law, using the strict element test. *People v. Lowry*, 160 P.3d 396, 398 (Colo.App.2007). "If the greater offense includes all of the elements of the lesser offense plus one or more additional elements, it is fair to say that the lesser offense is included within the greater offense." *Meads v. People*, 78 P.3d 290, 294 (Colo.2003). But if "each offense necessarily requires proof of at least one additional fact which the other does not, the strict elements test is not satisfied and a presumption arises that convictions for both offenses is consistent with legislative intent." *People v. Leske*, 957 P.2d 1030, 1036 (Colo. 1998) (internal quotation marks omitted).

¶ 35 Applying this test here, section 18–8–211(1), C.R.S.2013, provides:

> A person *confined in any detention facility within the state* commits active participation in a riot when he, with two or more other persons, actively participates in violent conduct that creates grave danger of, or does cause, damage to property or injury to persons and substantially obstructs the performance of institutional functions, or commands, induces, entreats, or otherwise attempts to persuade others to engage in such conduct.

(Emphasis added.)

¶ 36 By contrast, section 18–9–104(1) provides that "[a] person commits an offense if he or she engages in a riot." And a "riot" is defined as "a public disturbance involving an assemblage of three or more persons which by tumultuous and violent conduct creates grave danger of damage or injury to property or persons or substantially obstructs the performance of any governmental function." § 18–9–101(2).

■ ¶ 37 Thus, each of these two offenses requires proof of one element that the other does not. Under section 18–8–211(1), the offender must have been confined in a detention facility. But under section 18–9–104(1), the offender—who need not have been confined—must have caused a public disturbance. Thus, engaging in a riot is not a lesser included offense of rioting in a detention facility. *See Meads*, 78 P.3d at 294 (upholding the defendant's convictions where establishing all elements of the greater offense did not necessarily establish all elements of the lesser offense).

¶ 38 Accordingly, we conclude that defendant's convictions for engaging in a riot and rioting in a detention center do not merge.

### IV. Crime of Violence Sentence

■ ¶ 39 The Attorney General concedes defendant's contention that the trial court erred by applying crime of violence for sentencing to his conviction for engaging in a riot. We agree, vacate his entire sentence, and remand for resentencing.

¶ 40 We review a trial court's sentencing decision for abuse of discretion. *People v. Robinson*, 187 P.3d 1166, 1177 (Colo.App. 2008). "A trial court necessarily abuses its discretion where it misconstrues or misapplies the law." *Id.* If a trial court's "erroneous assumption of what the law required influenced its decision" to impose a certain sentence, "we must vacate the sentence in its entirety and remand for resentencing." *People v. Simon*, 100 P.3d 487, 496 (Colo.App. 2004).

¶ 41 Generally, when a defendant is convicted of multiple offenses, the trial court has discretion to impose consecutive or concurrent sentences. *Juhl v. People*, 172 P.3d 896, 900 (Colo.2007). But if two or more of the offenses are crimes of violence, a court's sentencing discretion is limited by section 18–1.3–406(1)(a), C.R.S.2013, which requires that "[a] person convicted of two or more separate crimes of violence arising out of the same incident shall be sentenced for such crimes so that the sentences are served consecutively rather than concurrently." *People v. Trujillo*, 114 P.3d 27, 33 (Colo.App.2004). And under section 18–1.3–406(1)(a), "[a]ny person convicted of a crime of violence shall

be sentenced ... for a term of incarceration of at least the midpoint in, but not more than twice the maximum of, the presumptive range."

¶ 42 Here, the trial court imposed a consecutive six-year sentence for engaging in a riot, after the prosecution told the court that this offense was a crime of violence. But section 18–9–104(1) does not define engaging in a riot as a crime of violence. Nor is it listed in section 18–1.3–406. Thus, neither an increased sentencing range nor a consecutive sentence was mandated.

¶ 43 Accordingly, we vacate defendant's entire sentence and remand for a new sentencing hearing.

## V. Presentence Confinement Credit

¶ 44 The Attorney General also agrees with defendant, as do we, that the trial court erred in calculating defendant's presentence confinement credit (PSCC). However, defendant and the Attorney General disagree as to the correct amount of PSCC. Although we have vacated defendant's entire sentence, we address this contention because it will arise on resentencing.

¶ 45 Whether a defendant is entitled to PSCC is reviewed de novo. *People v. Roy,* 252 P.3d 24, 27 (Colo.App.2010).

¶ 46 Under section 18–1.3–405, C.R.S.2013, "[a] person who is confined for an offense prior to the imposition of sentence for said offense is entitled to credit against the term of his or her sentence for the entire period of such confinement." To receive PSCC, "an offender must have been actually confined and there must have been a substantial nexus between the confinement and the charge for which the sentence is ultimately imposed." *Beecroft v. People,* 874 P.2d 1041, 1044 (Colo.1994) (interpreting a predecessor statute); *see Schubert v. People,* 698 P.2d 788, 795 (Colo.1985) (same).

¶ 47 Where, as here, a defendant faces charges in more than one case during his confinement, a substantial nexus "means that

the defendant would have remained confined in the same judicial district on the charge for which credit is sought in the absence of any other charge." *Massey v. People,* 736 P.2d 19, 23 (Colo.1987); *see also Schubert,* 698 P.2d at 795 (the question in this context is: "Was the presentence confinement actually caused by the charge or conduct for which the offender is to be sentenced?").

¶ 48 The defendant bears the burden of establishing an entitlement to PSCC under the statute. *See Massey,* 736 P.2d at 23; *People v. Freeman,* 735 P.2d 879, 881 (Colo. 1987).

¶ 49 Here, the trial court credited defendant with 438 days of PSCC using his sentencing date—November 22, 2011—and the date when the arrest warrant was issued—June 3, 2010.[16] Both defendant and the Attorney General agree that this calculation should have been 538 days.

¶ 50 Yet, defendant further argues that PSCC should have been based on the earlier date of the incident—March 5, 2010—because then he was being detained in the Jefferson County jail, albeit on federal charges. The Attorney General responds that shortly after the incident, defendant was transferred to the El Paso County jail, where he continued to be held on the federal charges until they were later dismissed. According to the Attorney General, defendant should only receive PSCC for the time he was confined in Jefferson County on the charges in this case. When the federal charges were dismissed on February 24, 2011, defendant was returned to Jefferson County. And at that time, the warrant in this case was served.

¶ 51 We agree with the Attorney General because defendant has failed to establish a substantial nexus between the charges in this case and his confinement in El Paso County. The record does not show that he would have been released from confinement in El Paso County, had the charges in this case been dismissed. To the contrary, he

---

16. Even though the arrest warrant was not served on defendant at this time, the trial court found that "[t]his is a case where they knew where the defendant was ... [h]e was in Colorado Springs in their jail. They could have served the warrant at that time, and so the Court thinks it's fair to give him credit for that time served."

was released from that confinement only once the federal charges were dismissed. Then the authorities returned him to Jefferson County, where the arrest warrant in this case was served on him.

¶ 52 Nor has defendant shown that the charges in this case "delayed the resolution" of the federal charges, "prevented the defendant's release" from El Paso County, "or contributed in any way to his confinement outside of Jefferson County." *Freeman*, 735 P.2d at 881; *see Massey*, 736 P.2d at 23 ("The defendant has not proven ... that the Pitkin County charges prevented the defendant's release from the Mesa County jail or contributed to his confinement outside of Pitkin County. Absent such proof, the defendant is not entitled to an award of [PSCC] ... for periods of incarceration in Mesa County.").

¶ 53 Accordingly, on remand for resentencing, the trial court shall calculate defendant's PSCC based solely on the time he has been confined in Jefferson County for the charges in this case. *See People v. Henry*, 2013 COA 104, ¶ 16, 310 P.3d 281 (directing the court on remand to amend the mittimus to reflect certain amount of PSCC).

## VI. Conclusion

¶ 54 The judgment of conviction is affirmed. The sentences are vacated and the case is remanded for resentencing.

Booras, J., concurs

Román, J., concurs in part and dissents in part

JUDGE ROMÁN concurring in part and dissenting in part.

¶ 55 In my view, the nature of sufficiency of the evidence review does not lend itself to plain error analysis. Accordingly, even though the sufficiency of the evidence contention is unpreserved, I would reach the merits and conclude that insufficient evidence exists to sustain the conviction for engaging in a riot under 18–9–104(1), C.R.S.2013.

¶ 56 Typically, an appellate court begins its analysis by reviewing a trial court's ruling to determine if any error occurred. *See, e.g.,*

*People v. Jones*, 2013 CO 59, ¶ 11, 311 P.3d 274 (a trial court's evidentiary rulings are reviewed for an abuse of discretion); *Dempsey v. People*, 117 P.3d 800, 807 (Colo.2005) (a trial court's rulings on questions of law are reviewed de novo). This is true whether a contention is preserved, *see Krutsinger v. People*, 219 P.3d 1054, 1063 (Colo.2009) (trial court's evidentiary error was harmless), or unpreserved, *see People v. Miller*, 113 P.3d 743, 750 (Colo.2005) (trial court's instructional error reviewed for plain error).

¶ 57 When there is an error relating to the sufficiency of the evidence, by definition, there is insufficient evidence to sustain the conviction. *See Dempsey*, 117 P.3d at 810 (conviction reversed because evidence was insufficient to justify the defendant's conviction for obstructing a lawful assembly). Under that circumstance, the conviction cannot stand even if the contention is unpreserved. If, on the other hand, the evidence is sufficient and there was no error, the analysis ends. *See id.* (evidence sufficient to sustain conviction for obstructing a peace officer). This is the method of review Colorado courts have utilized to date, and I see no reason to depart from that method.

¶ 58 Based on that resolution, I would not address Parts III and IV of the majority opinion. I concur, however, with Part V of the majority's opinion that the trial court should calculate defendant's presentence confinement credit based solely on the time he has been confined in Jefferson County for the charges in this case.

## I. Standard of Review

¶ 59 Our supreme court "reviews questions relating to sufficiency of the evidence de novo." *People v. Roggow*, 2013 CO 70, ¶ 13, 318 P.3d 446. The prosecution has the burden of establishing " 'sufficient evidence to establish guilt—no more, no less.' " *Dempsey*, 117 P.3d at 807 (quoting *People v. Bennett*, 183 Colo. 125, 130, 515 P.2d 466, 469 (1973)).

¶ 60 Divisions of this court have followed supreme court precedent even when the issue is raised for the first time on appeal—until now. *See People v. Randell*, 2012 COA

108, ¶ 30, 297 P.3d 989 ("A defendant may challenge the sufficiency of the evidence on appeal without moving for a judgment of acquittal in the trial court. Accordingly, we reject the People's contention that the insufficient evidence claims defendant failed to raise in the trial court should only be reviewed for plain error." (citation omitted)).

¶ 61 In *People v. McBride*, 228 P.3d 216, 226 (Colo.App.2009), another division explained that the sufficiency of evidence "standard is so high, and the consequences to the rare defendant able to satisfy it so severe, that we apply it even where (as here) a defendant failed to preserve the challenge by raising it in the trial court." *Accord People v. Garcia*, 2012 COA 79, ¶ 35, 296 P.3d 285; *People v. Duncan*, 109 P.3d 1044, 1045 (Colo. App.2004).

¶ 62 Other states also address insufficiency of the evidence claims for the first time on appeal without applying plain error review. *See State v. Thomas*, 62 Conn.App. 356, 772 A.2d 611, 615 (2001) (unpreserved sufficiency of the evidence claims are not reviewable under the plain error doctrine because they involve a fundamental constitutional right); *Garza v. State*, 284 Ga. 696, 670 S.E.2d 73, 79 n. 7 (2008) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and noting the importance under due process that sufficient evidence exists as to every element of the crime of which a defendant is convicted) (superseded on other grounds by statute); *State v. Wright*, 154 Idaho 157, 295 P.3d 1016, 1017 n. 1 (App. 2013); *State v. Foster*, 298 Kan. 348, 312 P.3d 364, 368 (2013); *Commonwealth v. Joyner*, 467 Mass. 176, 4 N.E.3d 282, 288 (2014) (reviewing unpreserved insufficiency claim "because findings based on legally insufficient evidence are inherently serious enough to create a substantial risk of a miscarriage of justice" (quoting *Commonwealth v. Powell*, 459 Mass. 572, 946 N.E.2d 114, 122 (2011))); *State v. Criswell*, 370 Mont. 511, 305 P.3d 760, 763 (2013); *State v. Stein*, 127 N.M. 362, 981 P.2d 295, 297 (App.1999) (reviewing unpreserved insufficiency claim because "[n]o error is more fundamental than the conviction of an innocent person, and no right of a party is more fundamental than the right not to be convicted when innocent"); *State v. Martinez*, —— N.C.App. ——, 749 S.E.2d 512, 514 (2013) (invoking authority under an appellate rule that allows for review of unpreserved issues in part because "it is difficult to contemplate a more 'manifest injustice' to a convicted defendant than that which would result from sustaining a conviction that lacked adequate evidentiary support" (quoting *State v. Gayton–Barbosa*, 197 N.C.App. 129, 676 S.E.2d 586, 590 (2009))); *Musgrove v. State*, 422 S.W.3d 13, 15 n. 1 (Tex.App.2013); *Garay v. State*, 165 P.3d 99, 101 n.1 (Wyo.2007) (abandoning the plain error rule where sufficiency of the evidence is the issue).[1]

¶ 63 I too see no reason to apply the plain error rule here because "a defendant is always prejudiced if he is found guilty and the evidence is not sufficient to establish his guilt." *Garay*, 165 P.3d at 101 n. 1; *see also United States v. Melot*, 732 F.3d 1234, 1240 (10th Cir.2013) ("[A] conviction in the absence of sufficient evidence of guilt is plainly an error, clearly prejudiced the defendant, and almost always creates manifest injustice." (quoting *United States v. Goode*, 483 F.3d 676, 681 n. 1 (10th Cir.2007))).

---

1. In its entirety, the Wyoming Supreme Court stated in footnote one:

 Historically, this Court has paid lip service to the concept of giving only the plain error rule's limited review to sufficiency of the evidence issues, but in practice we have performed our usual sufficiency of the evidence analysis whether or not a motion for judgment of acquittal was made in the trial court. In truth, the plain error standard does not lend itself to application where the issue is sufficiency of the evidence. One, there is no "incident" that is alleged to be error, and no objection can be made to the failure to have presented evidence on one or more of the elements of the crime. Two, the "clear and unequivocal rule of law" element of plain error analysis does not "fit" a sufficiency of the evidence analysis. Third, the proposition that a defendant's guilt must be proved with competent evidence bearing upon each of the crime's elements always involves a fundamental right. Finally, a defendant is always prejudiced if he is found guilty and the evidence is not sufficient to establish his guilt. For these reasons, we hereby abandon any adherence to the plain error rule where sufficiency of the evidence is the issue.

¶ 64 It is "an essential of the due process guaranteed by the Fourteenth Amendment that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson,* 443 U.S. at 316, 99 S.Ct. 2781. For this reason, a conviction in the absence of sufficient evidence always prejudices a defendant. *Melot,* 732 F.3d at 1240. Thus, it is academic whether a specific sufficiency objection is made, because a conviction based on legally insufficient evidence always constitutes a denial of due process, and therefore must be reversed. And, as a result, due process should compel appellate courts to fully evaluate a defendant's claims, even when unpreserved. *See also Sanchez v. People,* 2014 CO 29, ¶ 19, 325 P.3d 553 ("[T]he entry of a judgment of conviction for a crime not supported by a unanimous verdict beyond a reasonable doubt rises to the level of structural error, requiring reversal regardless of a sufficiently specific objection.").

¶ 65 The majority relies on the application of plain error review in the federal appellate courts as a basis for adopting plain error review in Colorado. However, the federal circuits often conclude that no plain error exists based on a fourth prong of plain error analysis, that the "[c]ourt may exercise discretion to correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Scull,* 321 F.3d 1270, 1277 (10th Cir.2003) (quoting *United States v. Hughes,* 191 F.3d 1317, 1322 (10th Cir.1999)); *see United States v. Clemens,* 738 F.3d 1, 13–14 (1st Cir.2013) (reviewing only for "clear and gross injustice"); *United States v. Fries,* 725 F.3d 1286, 1291 n. 5 (11th Cir.2013) (explaining that the parties requested plain error review but the predominant rule in the circuit is "better stated as requiring that we uphold a conviction unless to do so would work a 'manifest miscarriage of justice'"); *United States v. Brown,* 727 F.3d 329, 335 (5th Cir.2013) (reviewing unpreserved suffi-

ciency of the evidence issue only for "manifest miscarriage of justice"); *United States v. Natale,* 719 F.3d 719, 743 (7th Cir.2013) (same).

¶ 66 But, as the majority notes, the Colorado Supreme Court has not clearly acknowledged a fourth prong of plain error analysis in Colorado. *See People v. Greer,* 262 P.3d 920, 932–33 (Colo.App.2011) (J. Jones, J., specially concurring) (noting that the Colorado Supreme Court has not adopted the fourth prong of the federal plain error test, which allows appellate courts the discretion to remedy any error where a "miscarriage of justice" would result). And a conviction absent sufficient evidence is a manifest injustice. *See Fries,* 725 F.3d at 1294–95 (the failure to properly object at trial "may affect our standard of review, [but] permitting a conviction to stand where not a whit of evidence supports an essential element of the crime charged would do great damage to the considerations of due process that serve as a fundamental bulwark to our criminal justice system"); *State v. Gayton–Barbosa,* 197 N.C.App. 129, 676 S.E.2d 586, 590 (2009) (questioning whether there is more "manifest injustice" than sustaining a conviction that lacks evidentiary support).

¶ 67 Moreover, the majority does not address whether an error even occurred because it first concludes that any error was not obvious. *See People v. Vigil,* 251 P.3d 442, 447 (Colo.App.2010). Review in that manner seems to assume without deciding that an error occurred because review under the plain error standard of review in Colorado starts with the determination whether there was an error. *See Miller,* 113 P.3d at 750 ("Plain error *addresses error* that is both 'obvious and substantial.'") (emphasis added); *see also Robles v. People,* 2013 CO 24, ¶ 9, 302 P.3d 229 (concluding first that trial court did not err, and thus, necessarily, that it did not commit plain or structural error).

¶ 68 In addition, although the case before us involves a legal challenge to a statutory element,[2] I believe that plain error review is

**2.** I note that even the majority appears to recognize a difference between cases involving a legal challenge to a statutory element and those chal-

lenging the quantity and quality of evidence. This case should not be read therefore as standing for the proposition that all unpreserved suffi-

still inappropriate and can lead to an unfair result, as it does in this case. The error we are reviewing·is whether there was a conviction in the absence of sufficient evidence. *United States v. Delgado–Uribe,* 363 F.3d 1077, 1081 (10th Cir.2004) (an appellate court simply determines whether the evidence would establish each element of the crime). Thus, as here, when a defendant challenges the sufficiency of the evidence to a statutory element, the underlying question becomes whether defendant's conduct constitutes a crime. If defendant's conduct was not a crime, the conviction must be reversed. *See Dempsey,* 117 P.3d at 810. In cases such as this one, it is the role of the appellate court to engage in an independent analysis of the legal issue. And, as will be seen when I begin with de novo review of defendant's contention, I conclude that that his conduct in this case is not a crime under section 18–9–104(1) and therefore his conviction should not stand. But because the majority stops at obviousness and sidesteps the legal issue without ever reaching the merits, it affirms defendant's conviction despite, in my view, defendant having committed no crime.

¶ 69 Nor do the decisions from other divisions of this court that pre-date *Roggow* and *Dempsey* change my view. In *People v. Harris,* 633 P.2d 1095 (Colo.App.1981), in which the majority "joins," the division did not determine a legal question.[3] Moreover, although the *Harris* division stated, "to allege insufficiency of evidence as to an indispensable element of a crime is to assert plain error," it applied a de novo analysis by "reading the record as a whole" and determining that "sufficient competent evidence" existed to sustain the convictions. *Id.; cf. Roggow,* ¶ 13 (sufficiency of the evidence claims are reviewed de novo, determining "whether the relevant evidence, when viewed as a whole in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charges beyond a reasonable doubt"). Although the *Harris* division did not address how plain error would have been applied if an error had been found in that case, the problem that arises by the majority's holding today was alleviated by the *Harris* division's full analysis of the evidence.

¶ 70 I also have concerns regarding the practical effect of adopting plain error review for sufficiency of the evidence claims. This sea change adopted by the majority will affect strategic decision-making by trial counsel. Rather than relying on the expertise of the appellate divisions and courts to address novel issues of law, trial counsel will be forced to research and make legal objections at trial instead of focusing on the presentation of evidence.[4] Likewise, for strategic reasons, defense counsel may not wish to give the prosecutor an opportunity to present additional evidence if the prosecutor is proceeding under an incorrect view of the legal requirements to establish an element of the crime. And because the burden of proof is on the prosecution, a defendant should not be required to do so. Yet compelling objection in the trial court, as the majority now does, may afford the prosecution a reprieve. *See People v. Walters,* 641 P.2d 292, 294 (Colo. App.1981) (the trial court has discretion to allow either party to reopen the case and introduce evidence).

¶ 71 Finally, plain error review in this context does not further judicial economy; it impedes it. As a result of today's decision, defendants can be expected to raise an ineffective assistance of counsel claim virtually every time a lack of sufficient evidence claim fails under plain error analysis. This opinion will almost certainly create a new line of

ciency of evidence claims are subject to plain error analysis. *See People v. Garcia,* 2012 COA 79, ¶ 42, 296 P.3d 285 (reviewing an unpreserved sufficiency of the evidence challenge involving the quantity of evidence).

3. In *People v. Rice,* 40 Colo.App. 357, 361, 579 P.2d 647, 650 (1978), the division essentially treated the defendant's lack of a specific objection as a waiver and refused to address his contention on appeal. *Id.* ("Since we find no plain

error with respect to these convictions, we do not address the issue of sufficiency of the evidence relative to them.").

4. As will be seen, *infra,* this is no small matter for overtaxed trial public defenders. After conducting my own research in this case, I agree with defendant that only a handful of other jurisdictions, and no cases from Colorado, have interpreted similar statutory language.

Crim. P. 35(c) ineffective assistance of counsel claims. *See, e.g., Hagos v. People,* 2012 CO 63, ¶ 1, 288 P.3d 116 (ineffective assistance of counsel appeal based on counsel's failure to object to an erroneous instruction that did not constitute plain error on direct appeal).

¶ 72 But more than anything, I fail to see how plain error review is fair to a defendant who has been convicted despite insufficient evidence in the record to support the conviction.

¶ 73 Turning now to the merits of the case, I would reverse the conviction.

## II. Engaging in a Riot

¶ 74 Defendant contends the evidence is insufficient to sustain his conviction for engaging in a riot under section 18–9–104(1), because the incident inside the jail was not a "public disturbance." Under the circumstances here, and because Colorado has a separate statute addressing riots by persons confined in detention facilities, and the statutory requirements under section 18–9–104 were not met, I agree.[5]

¶ 75 Analysis of defendant's contention requires interpretation of section 18–9–104. Statutory interpretation is a question of law that appellate courts review de novo. *Bostelman v. People,* 162 P.3d 686, 689 (Colo.2007). When interpreting a statute, an appellate court must first determine and give effect to the legislature's intent by examining the plain and ordinary meaning of the statutory language. *People v. Madden,* 111 P.3d 452, 457 (Colo.2005). Statutory terms are read in context and construed according to common usage. § 2–4–101, C.R.S.2013.

¶ 76 When statutory language is clear and unambiguous, the provision is applied as written and no further statutory analysis is necessary. *Bostelman,* 162 P.3d at 690; *People v. Armstrong,* 720 P.2d 165, 167 (Colo. 1986). If the statutory language is ambiguous, however, we use other tools of construction, such as, "legislative history, the consequences of a given construction, and the end

to be achieved by the statute." *People v. Disher,* 224 P.3d 254, 256 (Colo.2010); *see* § 2–4–203, C.R.S.2013.

¶ 77 Section 18–9–104(1) provides, "[a] person commits an offense if he or she engages in a riot." A "riot" is defined as "a public disturbance involving an assemblage of three or more persons which by tumultuous and violent conduct creates grave danger of damage or injury to property or persons or substantially obstructs the performance of any governmental function." § 18–9–101(2), C.R.S.2013.

¶ 78 Defendant asserts that the incident was not a "public disturbance" because it took place in a part of the jail not open to the public. The term "public disturbance" is not defined by the statute, but our supreme court has acknowledged that "public" is an element of the general riot statute. *See People v. Bridges,* 620 P.2d 1, 4 (Colo.1980) (concluding that the defendant's conduct was public, violent, involved the requisite number of people, and created a grave danger of damage and injury to property and persons).

¶ 79 Because it is not clear from the statute whether the legislature intended that a public disturbance include incidents occurring inside a jail, the statute is ambiguous. *See Disher,* 224 P.3d at 256. Therefore, I look beyond the statutory plain language to assist my interpretation. *See id.*

¶ 80 Here, the legislature enacted a separate statute specifically penalizing active participation in a riot by a person confined in any detention facility. § 18–8–211, C.R.S. 2013. And it did not specify detention facilities in the general riot statute, section 18–9–104. Therefore, in most instances, incidents inside a jail will not be public disturbances. *See United States v. Wright,* 864 F.Supp. 1013, 1014–15 (D.Colo.1994) (because the Colorado legislature enacted a statute applicable to conduct at buildings owned by the federal government, a Veteran's Administration hospital is not included in the term "public place" under the general disorderly conduct statute, section 18–9–110, C.R.S., 2013); *cf.*

---

**5.** The jury also convicted defendant of participating in a riot by a person confined in a detention facility. § 18–8–211, C.R.S.2013. Defendant does not contest the sufficiency of the evidence for that conviction.

*State v. Riddle,* 45 N.C.App. 34, 262 S.E.2d 322, 324 (1980) (statutory definition for "public disturbance" specified that "places covered by this definition shall include . . . prisons").

¶ 81 The People assert that other jurisdictions have concluded that a jail is a public place for purposes of general riot statutes and that the actual location of the disturbance is not determinative. *See United States v. Bridgeman,* 523 F.2d 1099, 1144 (D.C.Cir.1975); *Commonwealth v. Zwierzelewski,* 177 Pa.Super. 141, 110 A.2d 757, 760 (1955). However, those jurisdictions did not have statutes in place specifically addressing riots by persons confined in detention facilities. *See Bridgeman,* 523 F.2d at 1113 (D.C. general riot statute was designed to be an "all-encompassing statute" that includes incidents in jails); *Zwierzelewski,* 110 A.2d at 760 (general riot statute applicable to prison riot; however, legislature subsequently enacted a statute to penalize riots in a penal or correctional institution); see also *People v. Dixon,* 91 Ill.2d 346, 63 Ill.Dec. 442, 438 N.E.2d 180, 185 (1982) (prison fight punishable under mob-action statute because statute did not require that acts occur in public view, and prior riot law did not require that a disorder occur in a public place).

¶ 82 In Colorado, however, the General Assembly has specified that riots in public places are covered by the general riot statute, *see Bridges,* 620 P.2d at 5 (in evaluating overbreadth challenge, supreme court noted that the defendant's conduct—a fight outside a party resulting in broken windows, bullet holes in vehicles and a nearby house, and injuries to participants—was "precisely the type of conduct the riot statute was intended to proscribe"), and riots by persons confined in detention facilities are covered by the riots in detention facilities statute. *See* § 18–8–211.

¶ 83 Turning to the facts of this case, I conclude that the incident was not a public disturbance as intended by the General Assembly in the general riot statute.

¶ 84 The People highlight the following record evidence in support of its assertion that the incident was a public disturbance because it affected the public: the entire jail had to be locked down, inmates had to be decontaminated due to gas exposure, the facility's fire sprinkler system was compromised, there was concern that the disturbance would spread to other parts of the facility, deputies were called to work outside their regular hours, visitors were evacuated, the facility could not accept new transfers during the incident, there was concern that the water system outside the facility could be affected, and the incident was broadcasted to local news agencies. *See Bridgeman,* 523 F.2d at 1116 (adopting a test for the public disturbance requirement of a general riot statute that evaluates whether a disturbance affects the public).

¶ 85 However, these facts seem to limit the incident and its impact to the boundaries of the detention facility. *See* § 18–8–211(4) (defining "detention facility" as "any building, structure, enclosure, vehicle, institution, or place, whether permanent or temporary, fixed or mobile, where persons are or may be lawfully held in custody or confinement").

¶ 86 To be sure, I can envision a situation in which both the general riot statute and the detention facility riot statute would apply to a defendant's conduct. However, the incident here falls short of the conduct proscribed by the legislature in the general riot statute. *Cf. Zwierzelewski,* 110 A.2d at 759–60 (local firefighters called to extinguish numerous fires, roads surrounding the institution blocked, entire institution taken out of the hands of the officials, and public feared mass prison break). Accordingly, I would reverse defendant's conviction under the general riot statute and remand the case to the trial court for a judgment of acquittal on that count.